**Reginald MARTIN and Sylvester B. Pennick, Plaintiffs,**

**v.**

**Anthony M. FRANK, Postmaster General, Defendant.**

**Civ. A. No. 90–570 MMS.**

United States District Court, D. Delaware.

March 31, 1992.

Jerome M. Capone, Wilmington, Del., for plaintiffs.

William C. Carpenter, Jr., U.S. Atty., and Kent A. Jordan, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del. (Robert L. Sawicki, Office of Field Legal Services, U.S. Postal Service, Philadelphia, Pa., of counsel), for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Plaintiffs, Reginald Martin ("Martin") and Sylvester Pennick ("Pennick"), employees of the United States Postal Service, brought an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), alleging adverse treatment by their supervisors and the Postal Service. Specifically, they allege deprivation of employment opportunities because of their race and color and in reprisal for pursuit of civil rights actions through both collective bargaining agreement procedures and the Equal Employment Office.

Through prior counsel, plaintiffs filed an August 17, 1989, Title VII action (C.A. No. 89–437) in this Court seeking relief from a pattern of racial discrimination. On September 5, 1990 the Honorable Joseph Longobardi dismissed the complaint without prejudice after the plaintiffs failed to serve the defendants within 120 days. On October 15, 1990, present counsel filed this action, which asserts more specifically the same allegations found in the dismissed complaint.

Defendant has moved for partial summary judgment arguing he is entitled to judgment in his favor on: (1) Counts II, VI, VII, IX, X and XII of the Complaint since plaintiffs failed to file the instant action within thirty days of the final decisions of the Postal Service or the Equal Employment Opportunity Commission ("EEOC") as required by 42 U.S.C. § 2000e–16(c); (2) Counts V and VIII of the Complaint since plaintiffs failed to initiate and exhaust the required administrative remedies; and (3) Counts I, III, IV, and X[1] of the Complaint since plaintiffs voluntarily entered into settlement agreements on those claims.

Plaintiffs urge summary judgment should not be granted since most of the counts in the Complaint are part of a pattern of continuous discrimination and many of the incidents occurred in retaliation for plaintiffs' previous employment discrimination complaints.

Before the Court now is defendant's partial summary judgment motion.[2] For the reasons set forth below the Court will grant defendant's motion for partial summary judgment.

### I.

In the Complaint, plaintiffs have alleged various wrongs committed by the Postal Service. For some of the wrongs, plaintiffs initiated complaints with the Postal Service [also referred to as, "the Agency"] and received right to sue letters or settlement agreements. For two of the wrongs, plaintiffs never instituted any actions with the Agency.

#### a. *Martin's Claims*

In Count I, Martin complains of a letter of reprimand given to him on September 17, 1984, for failure to follow directions. Prior to this lawsuit, Martin had filed a complaint with the Postal Service (App. to Pl.'s Br. (Docket Item 20) [hereinafter "Dkt."] at A–1), and by January 21, 1985 had settled this claim stipulating removal of the letter and back pay for the hours lost as a result of the incident. (Dkt. 20 at A–1).

Four years after the incident described in Count I, Martin alleges in Count IV that he was forced to work two hours of overtime while white employees only had to work one. (Compl. (Dkt. 1) at ¶ 30). Martin sought Equal Employment Opportunity ("EEO") counseling regarding this incident and ultimately entered into a settlement agreement on November 3, 1988 stipulating that overtime would be apportioned in accordance with the National Agreement between the Postal Service and the American Postal Workers Union. (Dkt. 20 at A–25–29). On July 25, 1989, Martin submitted a written request to reinstate the original Complaint due to the agency's alleged failure to comply with the agreement. (Dkt. 20 at A–30). After pursuing more agency procedures, Martin ultimately received an agency decision advising him that the settlement had not been breached and informing him of his right to appeal to the EEOC within twenty calendar days. (Dkt. 20 at A–37–A–38). Martin did not, however, appeal this decision. (Dkt. 17 at A–5, ¶ 6h).

In Count V, Martin alleges that on July 25, 1988, he was issued a Restricted Sick Leave notice by his supervisor, Barbara Reamer ("Reamer"). (Dkt. 1 at ¶ 33). Martin asserts that Reamer's action was based on racial discrimination and in retaliation for his previous claims of discrimination. Without explanation, the letter was rescinded effective July 29, 1988. (Dkt. 20 at A–39). Martin did not initiate an administrative complaint of discrimination with regard to this allegation. (Dkt. 17 at A–5, ¶ 7).

In Count VI, Martin alleges that approximately two months after he was issued the Restricted Sick Leave notice described in Count V of the Complaint, Martin's supervisor Leon Wegman ("Wegman") issued him a letter of removal from his position at that time. (Dkt. 20 at A–45). Martin initiated EEO procedures and eventually re-

---

1. Defendant urges two grounds for dismissal of Count X: (1) failure to file within the thirty day time limit and (2) a prior settlement agreement.

2. Plaintiffs originally requested a jury trial but have since abandoned this request.

ceived a right to sue letter on November 25, 1989. (Dkt. 17 at A–7, ¶ 8i; A–27–31; A–55–57).

In Count VII Martin alleges that in December 1988, his supervisor, Wegman, refused him permission on three separate occasions to speak to Martin's Shop Steward. (Dkt. 1 at ¶ 41). In Count IX Martin alleges Wegman issued him a Letter of Warning for misdelivery of accountable mail. (Dkt. 20 at A–70–71; A–88–90). Martin pursued agency and EEOC procedures on both these complaints and ultimately received a decision from the Office of Review and Appeals ("ORA") on February 27, 1990 informing Martin of his right to file suit in federal court. (Dkt. 17 at A–34; A–58–60). On March 19, 1990, the Postal Service presented Martin with an offer of full relief described in a February 27, 1990 ORA decision and certified it in accordance with 29 C.F.R. § 1613.215(a)(7). (Dkt. 17 at A–8, ¶ 9; A–36–38). On April 13, 1990, the ORA determined that the Postal Service had fully complied with its decision. (Dkt. 17 at A–39).

In Count X Martin complains of a notice of suspension for seven days without pay issued by Martin's supervisor, Barbara Reamer, on April 5, 1989. (Dkt. 20 at A–74). Although Martin entered into a grievance settlement, he also filed a complaint with the Postal Service. On August 4, 1989, Martin received the Postal Service's Final Agency Decision rejecting the complaint on the grounds that Martin had signed a settlement agreement giving him full relief. (Dkt. 20 at A–74–76). The decision informed Martin of his right to bring suit in federal court. *Id.* Martin further alleges he was told by John Vitsorek of the United States Postal Service that if he refused the grievance settlement, it would "go out of the office." (Dkt. 20 at A–40, ¶ 4).

In Count XII, Martin alleges that in July and September 1989 Reamer required him to work overtime assignments while not requiring the same of two junior white employees, all in violation of the collective bargaining agreement. (Dkt. 20 at A–95–101). Martin filed EEO complaints, re-

fused to settle these charges, and ultimately received the agency's final decision rejecting Martin's complaints because he had already received full relief. (Dkt. 17 at A–9, ¶ 12b; A–44–52). These decisions were received by Martin on April 6 and May 1, 1990 and informed Martin of his right to file a suit in federal court. (Dkt. 17 at A–48; A–52).

In Counts XIII and XV Martin has alleged other discriminatory acts. Defendant, however, has not moved for summary judgment on these counts.

### b. *Pennick's Claims*

In Count II of the Complaint, Pennick alleges he was discriminatorily denied a promotion because of his race and in retaliation for previous EEO complaints he had filed. Pennick sought EEO counselling and ultimately entered into a settlement agreement which provided he would be promoted after the successful completion of certain training programs. (Dkt. 20 at A–10). Unsatisfied with the perceived inaction by the Postal Service, Pennick submitted a request to reopen his complaint. (Dkt. 20 at A–14–15; A–18). Ultimately, the request was denied by an ORA decision received by Pennick on December 1, 1990. (Dkt. 17 at A–13–15; A–53–54). The decision also informed Pennick of his right to file suit in federal court.

In Count III, Pennick alleges that although he was assigned to work as a Window Distribution Clerk, his supervisor, Wegman, did not allow him to assume the duties of that position. Pennick requested EEO counseling and then withdrew this request on July 17, 1987 as a result of an EEO settlement. (Dkt. 20 at A–24).

In Count VIII, Pennick alleges he was forced to work two hours of overtime in February 1989 because of his race and as a reprisal for filing EEO complaints. Pennick filed a grievance through the union but did not pursue an administrative complaint of discrimination with regard to this claim.

In Counts XI and XIV Pennick alleges the Postal Service committed other acts of discrimination. Defendant, however, has

not moved for summary judgment on these counts.

## II.

■ Generally, a Title VII complainant must exhaust administrative remedies by "seek[ing] relief in the agency that has allegedly discriminated against him." *Brown v. General Serv. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). The exhaustion requirement is part of the "statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action.... Conciliation rather than formal court proceedings remains the preferred method of settling disputes." *Ostapowicz v. Johnson Bronze Company*, 541 F.2d 394, 398 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977).

"Before filing an administrative complaint, a federal employee is required to bring to an EEO counselor's attention any discriminatory conduct within thirty days of the date of the discriminatory conduct or within thirty days of the date the employee knew or reasonably should have known of the discriminatory conduct." *Rochon v. Attorney General of U.S.*, 734 F.Supp. 543, 547–48 (D.D.C.1990) (citing 29 C.F.R. § 1613.214(a)(i) (1989)).[3] "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks*, 449 U.S. 250, 256–57, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980).

■ Scholars have recognized that Title VII places a large part of the burden of enforcement of civil rights on the victims of discrimination as it is often they who bring suit directly against a discriminating employer. The employee, however, has only a short time from the date of the alleged unlawful employment practice to exercise his/her power of enforcement by contacting an EEO counselor. *See* Note, *Continuing Violations of Title VII: A Suggested Approach*, 63 Minn.L.R. 119, 120 (Nov.1978). "Thus, there seems to be a fundamental tension in Title VII between its system of private enforcement and its short limitations period." *Id.* The courts have attempted to resolve this tension, in part, by developing an equitable exception to the short time limitations. That exception has become known as the "continuing violation" doctrine.

In suits brought by a federal employee, "[this] equitable exception to the thirty day time limitation for contacting an EEO counselor is '[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.'" *Rochon*, 734 F.Supp. at 548 (quoting *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989)). The continuing violations "theory, the precise contours and theoretical bases of which are at best unclear, relieves a plaintiff who makes such a claim from the burden of proving that the entire violation occurred within the actionable period." *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 979 (5th Cir. 1983) (footnote omitted), *cert. denied*, 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986). "The emphasis is not upon the effects of [an] earlier employment decision; rather, it 'is [upon] whether any present *violation* exists.'" *Bronze Shields, Inc. v. New Jersey Dept. of Civil Serv.*, 667 F.2d 1074, 1083 (3d Cir.1981) (quoting *Ricks*, 449 U.S. at 257, 101 S.Ct. at 504), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982).

### a.

■ Under traditional analysis, the continuing violation theory, originally designed to circumvent the filing requirements with the EEO counselor, would simply not apply to situations where a plaintiff, in fact, timely files with an EEO counselor. In this case, however, plaintiffs have argued the continuing violation theory should be extended to cover both the situations (1)

---

**3.** EEO counselors are designated by the agency to assist the head of the agency. *See* 29 C.F.R. 1613.204(c) (1990).

where plaintiffs, in fact, timely filed complaints with an EEO counselor, but failed to timely file suit in federal court after receiving right to sue letters (*See* Counts II, VI, VII, IX, X and XII); and (2) where plaintiffs timely filed complaints with an EEO counselor and eventually settled those claims. (*See* Counts I, III, IV, and X). The Court holds the continuing violation theory does not apply to resurrect such claims.

The Court of Appeals for the Seventh Circuit has articulated the rationale behind the continuing violation theory. *See Stewart v. CPC Int'l, Inc.*, 679 F.2d 117 (7th Cir.1982) (per curiam).

> '[C]ontinuing violation' is the term used to describe the rule that a violation of Title VII occurs, and triggers the time limit for filing a charge, when the employee knew or should have known that he or she was discriminated against. This rule is applied in cases, usually involving hiring or promotion practices, where the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the 'violation' occurred.

*Id.* at 120 (citing *Ricks*, 449 U.S. 250, 101 S.Ct. 498). Crucial to the rationale behind the continuing violation theory is whether the plaintiff *knows* he or she has been discriminated against. The Court of Appeals for the First Circuit noted,

> A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby

able to perceive the overall discriminatory pattern.

*Sabree v. United Bhd. of Carpenters and Joiners*, 921 F.2d 396, 402 (1st Cir.1990).

Here, however, plaintiffs, by initiating and fully pursuing the appropriate procedures on Counts I, II, III, IV, VI, VII, IX, X and XII, were demonstrably aware of discriminatory acts against them. As knowing plaintiffs who had timely filed with an EEO counselor they had to follow through on those complaints or lose them. Accordingly, they cannot now hide behind the continuing violation theory in order to get around the filing requirements of a Title VII suit in federal court. *See Scott v. St. Paul Postal Service*, 720 F.2d 524, 525 (8th Cir.1984) (per curiam) ("A claim of continuing discrimination does not in any way affect the complainant's obligation to file an action in district court within thirty days of receipt of the agency's final decision disposing of his complaint."), *cert. denied*, 465 U.S. 1083, 104 S.Ct. 1453, 79 L.Ed.2d 770 (1984). Nor can plaintiffs use the continuing violation theory as a talisman to revive claims they have already settled.[4]

Defendant is, therefore, entitled to summary judgment on Counts I, II, III, VI, VII, IX, X,[5] and XII.

b.

■ Final decisions on the claims of discrimination and reprisal contained in Counts II, VI, VII, IX, X and XII were received by plaintiffs more than thirty days prior to the filing of the present Complaint.

---

**4.** Plaintiffs' argument that the continuing violation theory should revive settled claims is contrary to "the established principle that one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle." *Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir.1984) (per curiam); *see also Wilmes v. United States Postal Service*, 810 F.2d 130, 132 (7th Cir.1987) (quoting the same).

Moreover, to the extent plaintiffs can allege a breach of a settlement agreement due to a generalized notion of racial discrimination, plaintiffs must have timely raised those issues once plaintiffs were aware of the breach. With each new complaint filed by plaintiffs in this case,

plaintiffs were certainly aware that any past Postal Service's promise not to discriminate had been broken. Therefore, plaintiffs will not be permitted to use the continuing violation theory to excuse a failure to timely raise any alleged breach of a settlement agreement due to a generalized notion of racial discrimination.

**5.** Regarding Count X, plaintiffs make the additional argument that Martin was coerced into accepting the settlement. Martin, however, received a right to sue letter after the settlement was reached and could have filed suit in federal court alleging he was coerced into the settlement. Moreover, the factual basis for plaintiff's coercion argument is dubious at best.

As federal employees have only thirty[6] days to file a Title VII suit in federal court after receiving a final action taken by the agency, failure to bring suit within the requisite thirty days would prohibit plaintiffs in this case from proceeding on Counts II, VI, VII, IX, X and XII unless that limitations period were equitably tolled. Specifically, plaintiffs argue the filing of the first suit on August 17, 1989, tolled the filing requirements. The Court, however, declines to equitably toll the limitations period.

■ Although the limitations period is subject to the principles of equitable tolling and estoppel, *Hornsby v. United States Postal Service*, 787 F.2d 87, 89 (3d Cir. 1986), the filing of a complaint which is subsequently dismissed without prejudice, as in this case, does not automatically toll a limitations period: "It is a well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice. As regards the statute of limitations, the original complaint is treated as if it never existed." *Cardio–Medical Assoc. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir.1983); *see also Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 29 (6th Cir.1987) (per curiam) (the filing of a complaint which is later dismissed without prejudice because plaintiff failed to perfect service upon defendant within 120 days does not toll the statutory filing period of Title VII); *see generally* Cook & Sobieski, 4 *Civil Rights Actions*, ¶ 21.17[C] at 21–206 (1991). Because plaintiffs' prior action was dismissed due to plaintiffs' failure to serve defendants within 120 days, there was no equitable tolling of the limitations period. Defendant will be granted summary judgment on Counts II, VI, VII, IX, X and XII.

c.

■ Plaintiffs did not timely file a complaint with the EEO counselor on the underlying facts of Counts V and VIII. That failure in and of itself warrants dismissal of Counts V and VIII unless the underlying facts were later brought to the attention of an EEO counselor as part of a continuing violation theory. Even assuming that the underlying facts of Counts V and VIII were, in fact, brought before the EEO counselor as part of a continuing violation, plaintiffs do not prevail on these counts.

To prevail on these claims under the continuing violation theory plaintiffs must show "a series of related acts, one or more of which falls within the limitations period...." *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982) (quoting B. Schlei & P. Grossman, *Employment Discrimination Law* 232 (Supp. 1979)). Because there is no dispute that Counts XI, XIII, XIV and XV were filed in a timely manner, plaintiffs argue summary judgment on Counts V and VIII should be denied. While it is true that some of the actions fall within the time limitations period, plaintiffs cannot demonstrate that the actions are related.

In *Berry*, 715 F.2d 971, the Court of Appeals for the Fifth Circuit set forth a now widely followed standard for determining whether a plaintiff has asserted a valid claim under the continuing violation theory ("the *Berry* test"):

This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence

---

6. Before the 1991 Civil Rights Act was passed, a federal employee had 30 days to file a Title VII suit in federal court after receiving notice of final action taken by the agency. Under the 1991 Civil Rights Act, that time limit was extended to 90 days. The Court takes no position as to whether the filing extension should be applied retroactively because under either time limit, plaintiff failed to timely file suit in federal court.

which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Id.* at 981.

Applying the *Berry* test, the Court finds the continuing violation theory is inapplicable to Count V which asserts Martin was wrongfully issued a Restricted Sick Leave notice by his supervisor, and is similarly inapplicable to Count VIII which asserts Pennick was required to work two hours of overtime. Under the first and second prongs of the *Berry* test, while plaintiffs allege all the acts of discrimination in the Complaint are racial in nature, the acts themselves are not similar and are more in the nature of isolated decisions. "These dissimilar types of discrimination do not tend to connect in a continuing violation." *Caudill v. Farmland Industries, Inc.,* 698 F.Supp. 1476, 1483 (W.D.Mo.1988), *aff'd,* 919 F.2d 83 (8th Cir.1990); *see also Evans v. Chesapeake & Potomac Tel. Co. of Maryland,* 518 F.Supp. 1074, 1078 (D.Md.1981) ("[T]he plaintiff may not argue that dissimilar acts are part of a pattern of discrimination. To hold otherwise would allow an individual plaintiff, with any discrete timely claim of discrimination, to raise any other unrelated acts which occurred during the tenure of his employment. This would nullify the policy against 'stale claims' which finds voice in the statute of limitations."); *Hill v. AT & T Technologies, Inc.,* 731 F.2d 175, 179–80 (4th Cir.1984) ("continuing violations" do not constitute a talismanic or shibboleth term reviving stale claims); *E.E.O.C. v. Westinghouse Elec. Corp.,* 725 F.2d 211, 218 (3d Cir.1983) (The continuing violation theory does not cover *"isolated instances* of discrimination concluded in the past, even though the *effects* persist into the present."), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). Finally, and most importantly, the issuance of the sick leave notice and the assignment of two hours of overtime both had a degree of permanence which should have triggered plaintiffs' awareness of and duty to assert their rights.[7]

Accordingly, the continuing violation theory does not save Counts V and VIII.

### III.

■ Regarding Counts V and VIII plaintiffs also urge government employees are not required to exhaust administrative remedies where a plaintiff's claim is of retaliation for previous complaints of alleged discrimination. (*See* Pl.'s Br., Dkt. 19 at 21). The Court of Appeals for the Third Circuit has noted,

A victim of discrimination is not required to exhaust administrative remedies with respect to a claim concerning an incident which falls within the scope of a prior EEOC complaint or the investigation which arose out of it *provided that the victim can still bring suit on the earlier claim.*

*Waiters v. Parsons,* 729 F.2d 233, 235 (3d Cir.1984) (per curiam) (emphasis added). Accordingly, a plaintiff bringing a claim of retaliation based on the filing of an EEO complaint need not exhaust his/her administrative remedies with respect to that claim if it falls within the scope of a prior EEO complaint or the investigation which arose out of it.[8] The Court reasoned,

---

**7.** Additionally, by the time Martin received his Restricted Sick Leave notice, Martin had already filed a formal complaint based on the allegations contained in Count I of the Complaint and had sought counseling for the allegations contained in Count IV of the Complaint.

As with Martin, Pennick was well versed in the grievance procedures available to him. Prior to the incident complained of in Count VIII, Pennick had filed a formal complaint for the allegations contained in Count II of the Complaint and had sought EEO counseling for the allegations contained in Count III of the Complaint.

**8.** The Court of Appeals for the Third Circuit declined to adopt the per se rule of the Fifth Circuit that "all claims of 'retaliation' against a discrimination victim based on the filing of an EEOC complaint are 'ancillary' to the original complaint, and that therefore no further EEOC complaint need be filed." *Waiters,* 729 F.2d at 237 n. 10.

"[w]here discriminatory actions continue after the filing of an EEOC complaint ... the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints...." *Id.* at 237. In this case, however, neither Martin nor Pennick is able to bring suit on any *earlier* claim.[9] Therefore, neither Counts V nor VIII are saved. Accordingly, summary judgment will be granted in favor of defendants on Counts V and VIII.

### IV.

For the reasons set forth above, defendants' motion for partial summary judgment will be granted. An appropriate order will issue.

---

**9.** For explanations why neither Martin nor Pennick are able to bring suit on any earlier claims, *supra.*