VACATED AND REMANDED.

Dr. Kathleen Johnson WU, Dr. Hsiu–Kwang Wu, Plaintiffs–Appellants,

v.

Joab THOMAS, University of Alabama Board of Trustees, a body corporate, Roger E. Sayers, individually and in his official capacity as President of the University of Alabama, Dr. Richard Peck, individually, Max Hocutt, individually and in his official capacity as chairperson of the Department of Philosophy of the University of Alabama, Dr. John Formby, individually, Dr. James Yarbrough, in his official capacity as Dean of the College of Arts and Sciences of the University of Alabama, Dr. James G. Taaffe, in his official capacity as Academic Vice President of the University of Alabama, Dr. Billy Helms, in his official capacity as head of the Department of Finance, Economics and Legal Studies of the University of Alabama, Defendants–Appellants,

John Bickley, Michael Putnam, Movants.

No. 91–7538.

United States Court of Appeals, Eleventh Circuit.

July 27, 1993.

Susan Williams Reeves, Birmingham, AL, for plaintiffs-appellants.

Paul E. Skidmore, Office of Counsel, The University of Alabama System, Stanley J. Murphy, Hattie E. Kaufman, Office of Counsel, The University of Alabama System, Tuscaloosa, AL, for defendants-appellants.

Before EDMONDSON and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

PER CURIAM:

This case involves a Title VII retaliation claim. We affirm the grant of judgment notwithstanding the verdict ("JNOV").

Plaintiffs H.K. Wu and Kathleen Johnson Wu are professors at the University of Alabama ("University"). In 1984, Kathleen Wu sued the University and certain individuals for sex discrimination. District Judge Guin held a bench trial and found for the defendants on the merits. We affirmed. *Wu v. Thomas*, No. 84–2159 (N.D.Ala. Oct. 24, 1986), *aff'd*, 847 F.2d 1480 (11th Cir.1988) ("*Wu I* "), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989).

In 1987, plaintiffs filed this suit, alleging that defendants violated 42 U.S.C. § 2000–e, 42 U.S.C. § 1983, and the first and fourteenth amendments by retaliating against the Wus for bringing *Wu I*. Judge Guin granted defendants summary judgment, but we reversed and remanded for trial. *Wu v. Thomas*, 863 F.2d 1543 (11th Cir.1989) ("*Wu II* "). On remand, the jury ruled for each defendant except Hocutt, against whom they awarded $20,000 in compensatory damages and $60,000 in punitive damages to Kathleen Wu. The district court granted Hocutt's motion for JNOV or, alternatively, a new trial. Plaintiffs appeal.

## I. JNOV

The first question is whether the district court properly granted JNOV to Hocutt. Over plaintiffs' objection, the district court

made the jury fill out written interrogatories. Asked to list the ways, if any, that Hocutt retaliated against Kathleen Wu, the jury listed seven acts.[1] The district court granted JNOV on the basis that these acts involved no constitutionally protected interests and were contrary to no established law.

◼ To obtain damages under section 1983 for a due process violation, a plaintiff must show the denial of a protected property or liberty interest. Absent discharge, or loss of income or rank, injury to reputation is no protected interest. *Oladeinde v. Birmingham,* 963 F.2d 1481, 1486 (11th Cir.1992). The district court properly concluded that none of the jury's findings involved the denial of constitutionally protected interests.

But plaintiffs relied on more than the fourteenth amendment. They also sought damages under section 1983 for a Title VII violation. 42 U.S.C. § 2000e–3(a) prohibits discriminating against an employee for pursuing Title VII claims.[2] Earlier in this case, we held that plaintiffs might recover under section 1983 if they proved a violation of this Title VII provision. *See Wu II,* 863 F.2d at 1549 & n. 9.

◼ Defendants argue that, even if plaintiffs could recover for a Title VII violation, JNOV was still proper because Hocutt was entitled to qualified immunity. Qualified immunity is no defense to a Title VII action. But defendants could assert qualified immunity once plaintiffs tried to recover damages under section 1983 for the alleged Title VII violation. *See generally Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

To defeat a qualified immunity defense, plaintiffs bear a burden that cannot be met by relying on sweeping legal propositions. *See Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.1989). "General propositions have little to do with the concept of qualified immunity." *Muhammad v. Wainwright,* 839 F.2d 1422, 1424 (11th Cir.1987). Plaintiffs must show the law establishes the contours of a right clearly enough that a "reasonable official would understand that what he is doing" is unlawful. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

When Hocutt acted, it was clearly established that harassment based on an employee's race or gender could violate Title VII, even if the harassment involved no loss of money or position. *See, e.g., Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Rogers v. EEOC,* 454 F.2d 234 (5th Cir.1971). Our cases also clearly established that no employer could fire, demote, refuse to hire, or otherwise tangibly injure an employee for pursuing a Title VII action. *See, e.g., Whatley v. Metropolitan Atlanta Rapid Transit Auth.,* 632 F.2d 1325 (5th Cir.1980) (retaliatory discharge); *Bickel v. Burkhart,* 632 F.2d 1251 (5th Cir.1980) (retaliatory refusal to promote); *East v. Romine, Inc.,* 518 F.2d 332 (5th Cir.1975) (retaliatory refusal to hire), *overruled on other grounds, Burdine v. Texas Dep't of Community Affairs,* 647 F.2d 513 (5th Cir.1981)

But plaintiffs do not cite and we cannot find any case that clearly established that retaliatory harassment—as opposed to sexual or racial harassment—could violate Title VII where the employer caused the employee no tangible harm, such as loss of salary, benefits, or position.[3] The statute itself says that an employer cannot "discriminate" against a

---

1. The jury specifically found that Hocutt assigned Kathleen Wu a classroom with inadequate blackboard space; wrote a list of "bankers [sic] dozen ideas" to discipline Kathleen Wu; referred to her classes as dying; changed her textbook after her class was set up; criticized her lawsuit in front of faculty members and secretaries; called her dishonest with no proof; and damaged her reputation as teacher and a person.

2. 42 U.S.C. § 2000e–3(a) (1982) says:
   It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he ... has made a

charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under this subchapter.

3. In some retaliation cases, we have encountered claims that an employer harassed an employee but caused the employee no economic harm. But, because we disposed of each of these cases on other grounds, none establish the proposition that every unkind act, even those without economic consequences, can violate Title VII. *See, e.g., Baker v. Buckeye Cellulose Corp.,* 856 F.2d 167, 169 (11th Cir.1988) (because irreparable harm is presumed in Title VII cases, trial court

protected employee. That all hostile acts are wrongful is not plain from this language. Although we have interpreted Title VII to mean that an employer cannot retaliate by taking an "adverse employment action" against an employee, *see, e.g., Whatley,* 632 F.2d at 1328, we have never defined what this general phrase means. So, when Hocutt acted, a reasonable employer could not have known for certain whether acts short of firing, demoting, or refusing to hire an employee could violate Title VII.[4]

We hold only that, when Hocutt acted, it was not clearly established that acts like his

erred in refusing to hold hearing to decide if preliminary injunction against retaliatory acts was justified); *Jordan v. Wilson,* 851 F.2d 1290, 1292 (11th Cir.1988) (no retaliation established because no evidence supported finding that employer's acts harmed employee); *Bailey v. USX Corp.,* 850 F.2d 1506, 1508 (11th Cir.1988) (no retaliation established where bad reference caused no injury and was legitimately motivated); *McCollum v. Bolger,* 794 F.2d 602, 610 (11th Cir.1986) (no retaliation established where employer rescheduled work week, but had legitimate reason); *McCarthney v. Griffin–Spalding County Bd. of Educ.,* 791 F.2d 1549, 1553 (11th Cir.1986) (no retaliation established where employer met with employee to discuss Title VII charges, but had legitimate reasons); *Hamilton v. General Motors Corp.,* 606 F.2d 576, 580 (5th Cir.1979) (injunction unjustified where plaintiff failed to prove he was given harder assignments).

We have also considered claims that the plaintiff was harassed *and* ultimately fired or transferred. *See, e.g., Thompkins v. Morris Brown College,* 752 F.2d 558, 565–66 (11th Cir.1985) (remanding claim that plaintiff was harassed and then fired because trial court's findings were insufficient); *Hamm v. Board of Regents,* 708 F.2d 647, 653 (11th Cir.1983) (no retaliation established where employer reprimanded and then transferred plaintiff, but had legitimate reason for doing so); *Farshy v. Kagan,* 585 F.2d 749 (5th Cir.1978) (no retaliation established where plaintiff claimed he was harassed and then fired, but employer had legitimate reasons for its actions). Again, none of these cases clearly establish, for section 1983 purposes, that every slight triggered by an employee's earlier employment discrimination claim is unlawful.

Nor do the sexual and racial harassment cases settle the issue. Cases such as *Rogers* and *Vinson* interpret Title VII's racial and sexual discrimination provision, 42 U.S.C. § 2000e–2(a); their holdings cannot clearly establish the law on Title VII's retaliation provision, section 2000e–3(a). And, given the different factual contexts in which racial, sexual, and retaliatory acts arise, *reasonable doubt exists whether all three kinds* of conduct are, in a legal sense, to be treated the same for all purposes.

would violate Title VII. We do *not* hold that Hocutt's acts were lawful under Title VII; because of qualified immunity, we do not reach this second issue. The district court properly granted JNOV to Hocutt.[5]

## II. Recusal

■ Plaintiffs argue Judge Guin should have recused himself under 28 U.S.C. § 455[6] because he has ties to the University, and because he allegedly prejudged plaintiffs' claims.[7] We review for abuse of discretion. *See Davis v. Board of School Comm'rs,* 517 F.2d 1044, 1052 (5th Cir.1975).

4. That other circuits have had to decide what hostile acts do or do not constitute unlawful retaliation shows the issue is not frivolous. *See, e.g., Collins v. Illinois,* 830 F.2d 692, 702–04 & n. 7–10 (7th Cir.1987) (discussing whether lateral transfer that results in no loss of pay or benefits can be an "adverse employment action").

5. Plaintiffs argue the grant of JNOV was procedurally improper because the district court relied on an issue not raised in defendants' motions for directed verdict. The record does not support this claim.

6. 28 U.S.C. § 455(a) says:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Under 28 U.S.C. § 455(b), recusal is also required where a judge:

(1) ... has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

(4) ... knows that he ... has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

7. Plaintiffs' motion specifically alleged that recusal was required under 28 U.S.C. § 455(a) & (b) because: Judge Guin is listed in Who's Who and a University catalog as an adjunct University professor; Judge Guin plans to create a scholarship at the University; Judge Guin is a University football fan who has annually given $600 to the University for priority football tickets; all of Judge Guin's University ties are with the Tuscaloosa campus where both plaintiffs teach; Judge Guin recused himself in another case because of his University connections; and Judge Guin said before trial that he thought the EEOC would have rejected H.K. Wu's claims. On appeal,

Judge Guin's closest ties to the University are his status as an adjunct professor and his past contributions to the University. In denying plaintiffs' recusal motion, Judge Guin noted that he receives no salary as an adjunct professor and that his duties are limited to letting law students intern in federal court and judicial chambers for one semester. He also wrote that he has not donated money to the University for many years.

On these facts (which are uncontested), no reasonable observer would assume that Judge Guin had extra-judicial knowledge of this case or otherwise question Judge Guin's impartiality. So, none of Judge Guin's University connections disqualified him under section 455(a). *See United States v. Alabama,* 828 F.2d 1532, 1543 (11th Cir.1987) (judge's "background and associations" do not justify recusal); *Levitt v. University of Texas,* 847 F.2d 221 (5th Cir.1988) (school ties insufficient to disqualify judge); *McCann v. Communications Design Corp.,* 775 F.Supp. 1535, 1543–44 (D.Conn.1991) (same); *cf. Easley v. University of Michigan,* 853 F.2d 1351, 1356–68 (6th Cir.1988) (recusal required where reasonable observer might believe judge learned about case through extensive school ties); *Liljeberg v. Health Svcs. Acquisition Corp.,* 486 U.S. 847, 864–68, 108 S.Ct. 2194, 2205–06, 100 L.Ed.2d 855 (1988) (recusal required where judge was school trustee). And, plaintiffs point to no financial or other substantially affected interests that would disqualify Judge Guin under section 455(b)(4).

Bias under section 455 must be extrajudicial. *United States v. Meester,* 762 F.2d 867, 884–85 (11th Cir.1985). Taken in context, none of the statements and rulings cited by plaintiffs reflect extra-judicial bias. At most, plaintiffs' claims of personal bias rest on "unsupported, irrational, or tenuous allegations" about Judge Guin's views of plaintiffs. *Giles v. Garwood,* 853 F.2d 876, 878 (11th Cir.1988). The district court did not abuse its discretion in denying plaintiffs' motion for recusal.

plaintiffs point to several more of Judge Guin's comments and rulings that allegedly show that Judge Guin was biased against them. They claim, for instance, that Judge Guin described plaintiffs as "unpleasant" and "litigious" people.

## III. H.K. Wu's Claims

Plaintiffs argue the district court improperly refused to let H.K. Wu testify that, in 1981, he spoke to the University president about foreign-born faculty. They claim the 1981 speech was another reason why defendants retaliated against them. We review the district court's evidentiary decisions for abuse of discretion. *United States v. Russell,* 703 F.2d 1243, 1249 (11th Cir. 1983).

Plaintiffs' complaint, as amended, alleged defendants retaliated against the Wus because of *Wu I.* Plaintiffs did not introduce the 1981 speech as a basis for retaliation until they clarified their claims for a pretrial order. In that order, the district court took note of the new allegations about the 1981 speech, but added that the complaint would control the scope of plaintiffs' claims. Testimony on the 1981 speech was irrelevant to anything pled in the complaint and was therefore properly excluded.

Plaintiffs also say the district court improperly granted directed verdict on two of H.K. Wu's claims. H.K. Wu testified that he was told his faculty chair had a deficit and that he was barred from teaching a certain summer class in 1987. The district court then told the jury it could not award damages for the faculty chair remarks, nor could it award damages for lost wages based on the 1987 summer teaching incident.

Undisputed evidence showed that, although H.K. Wu was not allowed to teach one summer 1987 class, he could have taught other classes for the same pay. It was also undisputed that the University makes up deficits in H.K. Wu's faculty chair and that H.K. Wu was assured that the University would continue to do so. No reasonable juror could conclude the 1987 summer teaching incident resulted in lost wages, or that the chair incident caused plaintiffs financial or emotional damages.[8]

8. Plaintiffs also argue that defendants never moved for directed verdict on either the faculty chair or summer teaching claims. But defendants did argue in their directed verdict motions the evidence was insufficient to show emotional

## IV. Denial of Leave to Amend

Plaintiffs also say the district court improperly refused to let them amend their complaint to add defendant Joab Thomas in his individual capacity. We lack jurisdiction to review this claim because the notice of appeal, even construed liberally, gives no indication that plaintiffs intended to raise this issue. *See Osterneck v. E.T. Barwick Indus. Inc.*, 825 F.2d 1521, 1528 (11th Cir.1987), *aff'd*, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989).

AFFIRMED.

---

or financial damages on plaintiffs' claims. The district court's ruling on these points was thus procedurally proper.