**Brenda A. PERRYMAN, Plaintiff,**

v.

**Togo D. WEST, Jr., Secretary Department of the Army, Defendant.**

No. CV–95–A–362–S.

United States District Court,
M.D. Alabama,
Southern Division.

Dec. 23, 1996.

Kenneth C. Sheets, Dothan, AL, for plaintiff.

James E. Macklin, Arlington, VA, Patricia Snyder, Montgomery, AL, for defendant.

### MEMORANDUM OPINION

ALBRITTON, District Judge.

#### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment filed by the Defendant, Togo D. West, Jr., in his official capacity as Secretary of the Department of the United States Army ("West").

The Plaintiff, Brenda Perryman ("Perryman") initiated this case with claims for breach of a settlement agreement and for employment discrimination and retaliation under 42 U.S.C. §§ 2000e et seq. ("Title VII") and 42 U.S.C. § 1981. West's subse-

quent motion for dismissal was granted by this court as to the § 1981 claim. West now moves for summary judgment as to the breach of settlement agreement and Title VII claims.

For reasons to be discussed, West's motion is due to be GRANTED.

## II. *FACTS*

The facts in this case arise from Perryman's employment with the Department of the Army ("Department"). Perryman is an African–American woman who was employed by the Department beginning in October 1987. During her employment, Perryman filed several formal EEO charges against the Department alleging discrimination on the basis of race, sex and/or reprisal. In April of 1994, the Department and Perryman entered into a Negotiated Settlement Agreement ("Settlement Agreement") settling all pending EEO charges. Pursuant to this agreement, Perryman was transferred to the position of Procurement Clerk and her personnel filed was expunged of all counseling and disciplinary actions. Also pursuant to the terms of the Settlement Agreement, Perryman withdrew her pending EEO complaints.

In June of 1994, the Department began an investigation concerning a possible forged signature on Perryman's worker's compensation form. Perryman was never disciplined in the matter. She claims that the investigation was a reprisal in violation of the Settlement Agreement.

## III. *STANDARD OF REVIEW*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## IV. *DISCUSSION*

A plaintiff bringing a claim under Title VII must establish that the employer's actions were the result of intentional discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Where, as in this case, a plaintiff seeks to prove a claim by use of circumstantial evidence of the employer's intent, a framework of shifting burdens of proof applies. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The first phase of the analysis is the plaintiff's prima facie case of discrimination. *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff establishes the prima facie case, the burden then shifts to the employer to

state a legitimate, nondiscriminatory reason for its actions. *Id.* This is a burden of production, not persuasion. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. If the employer articulates a legitimate nondiscriminatory reason for its actions, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *St Mary's Honor Center,* 509 U.S. at 510–11, 113 S.Ct. at 2749. To avoid summary judgment, the "evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proferred explanation." *Howard v. BP Oil Co.,* 32 F.3d 520, 525 (11th Cir. 1994).

### A. Breach of Settlement Agreement and Retaliation Claims

Perryman alleges a breach of the Settlement Agreement which she entered into with her employer. The agreement states, in relevant part, that

The Army agrees to: Reassign Ms. Perryman to a Procurement Clerk ... expunge Ms. Perryman's official personnel file and adverse action file of any and all documents related to the proposed change to lower grade; expunge Ms. Perryman's AG personnel file of any and all counseling and other disciplinary actions; and, take no reprisal actions against Ms. Perryman.

The complainant agrees to withdraw any and all pending actions ...

Complainant's signature on this agreement constitutes full and complete settlement of this EEO complaint. In addition, the complainant agrees to waive her right to pursue administrative or judicial action in any form concerning the matters raised in this complaint and that they will not be made the subject of future litigation.

Perryman and West agree that the alleged violation of the settlement agreement arises from the Department's agreement to "take no reprisal actions against" Perryman. Perryman further narrows the alleged violation to the investigation of an alleged forgery of her worker's compensation form. Perryman's Memorandum in Support of Response to Defendant's Motion for Summary Judgment. Although this is a breach of contract claim, whether or not the contract was breached depends upon whether or not there was reprisal. Therefore, the court will address Perryman's reprisal claim in connection with her claim for retaliation, since both claims arise from the same investigation and both claims have the same legal elements. *See Dunning v. National Industries, Inc.,* 720 F.Supp. 924, 932 (M.D.Ala.1989) (equating a retaliation claim with a reprisal claim).

A plaintiff bringing a retaliation[1] claim must establish a prima facie case by showing that 1) she engaged in statutorily protected expression, 2) that there was subsequently an adverse employment action, and 3) that there is a causal link between the protected expression and the adverse action. *Meeks v. Computer Assoc. Intern'l,* 15 F.3d 1013, 1021 (11th Cir.1994).

In the instant case, it is undisputed that Perryman filed EEOC charges, that this expression is a protected activity under Title VII, and, furthermore, that the employer knew of this expression. West disputes, however, that there was an adverse employment action sufficient to establish a prima facie case of retaliation.

Perryman asserts that her employer's investigation into the possible forged worker's compensation claim form was in retaliation for protected activities and characterizes this action as retaliatory harassment. According to West, mere harassment cannot be considered an adverse employment action.

"Divergent authority, nationwide, obscures the parameters of adverse employment action." *Nelson v. Univ. of Maine System,* 923 F.Supp. 275, 281 (D.Maine, 1996). For example, an adverse employment action was found where a plaintiff had been relocated to an isolated corner of the workplace, *Harris v. Richards Mfg. Co., Inc.,* 511 F.Supp. 1193

---

1. The express statutory language prohibiting retaliation is that

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3.

(W.D.Tenn.1981), *aff'd in part, rev'd in part,* 675 F.2d 811 (6th Cir.1982), but was not found where a plaintiff was relocated to the "dirtier" part of the basement. *Ward v. Johns Hopkins Univ.,* 861 F.Supp. 367 (D.Md.1994).

The Eleventh Circuit has not conclusively determined whether or not harassment can constitute an adverse employment action. *See Wu v. Thomas,* 996 F.2d 271, 274 (11th Cir.1993), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1543, 128 L.Ed.2d 195 (1994). The *Wu* court noted that although the Eleventh Circuit has interpreted Title VII to mean that an employer cannot retaliate by taking an "adverse employment action," that general phrase has never been defined. *Wu,* 996 F.2d at 274. The court went on to explain that

> In some retaliation cases, we have encountered claims that an employer harassed an employee but caused the employee no economic harm. But, because we disposed of each of these cases on other grounds, none establish the proposition that every unkind act, even those without economic consequences, can violate Title VII.

*Id.* at 274 n. 3. *See also Gorman v. Roberts,* 909 F.Supp. 1479, 1489 (M.D.Ala.1995) ("the court cannot find any case that clearly established that retaliatory harassment could violate Title VII where the employer caused the employee no tangible harm, such as loss of salary, benefits, or position").

Although the Eleventh Circuit has not conclusively determined whether harassment is an adverse action, it has given some guidance as to the factors to be considered in finding an adverse employment action. A court in this district reasoned that statements made to an employee that were "specifically intended and, in fact, had the effect of demeaning her before her fellow officers and the public, as well as demoralizing her, so as to substantially impair her ability to function as an officer" were retaliation. *Jordan v. Wilson,* 662 F.Supp. 528, 532 (M.D.Ala.1987), *rev'd,* 851 F.2d 1290 (11th Cir.1988). In reversing this decision, the Eleventh Circuit found that the employee had failed to show by clear and convincing evidence that her work performance had suffered or that a hostile work environment had been created. *Jordan v. Wilson,* 851 F.2d 1290, 1293 (11th Cir.1988).

Therefore, while the Eleventh Circuit has not explicitly decided the issue of whether harassment is a retaliatory action, there is an indication that a term or condition of employment must be affected in order for there to be an adverse employment action. *See also Boyd v. Brookstone Corp. of New Hampshire,* 857 F.Supp. 1568 (S.D.Fla.1994) (holding that alleged retaliation in form of fabricated evidence submitted to EEOC did not affect "terms and conditions" of employment).

■ The focus upon whether terms or conditions of employment have been affected is consistent with precedent from other circuits. Many courts agree that "even under a liberal reading of adverse employment activity, an employee must ultimately show some employment injury." *See Nelson,* 923 F.Supp. 275, 281. In other words, an employment action must affect a term or condition of employment and is not adverse merely because the employee dislikes it or disagrees with it. *See Fortner v. State of Kansas,* 934 F.Supp. 1252, 1267 (D.Kansas 1996).

■ The employment injury said to be caused by an adverse employment action does not, however, have to be immediate economic injury. Some courts addressing the issue of retaliation have identified a "range of acts as adverse, based upon the scope of their consequences." *Boyd,* 857 F.Supp. at 1572. A term or condition of employment may be said to have been affected if there is a "demonstrable adverse impact on future employment opportunities or performances." *Fortner,* 934 F.Supp. at 1266. An example of such an action is the writing of unfavorable reference letters. *See London v. Coopers & Lybrand,* 644 F.2d 811 (9th Cir.1981); *Rutherford v. American Bank of Commerce,* 565 F.2d 1162, 1164–65 (10th Cir. 1977).

This court has found one circuit which has recognized retaliatory harassment as an adverse employment action. *See Knox v. State of Indiana,* 93 F.3d 1327 (7th Cir.1996). In *Knox,* an employee complained to her employer about sexually harassing behavior. *Knox,* 93 F.3d 1327, 1335. After the employee complained, she suffered "fellow worker

harassment and vicious gossip." *Id.* In upholding a jury verdict in favor of the employee's retaliation claim, the court described the harassment and gossip as "adverse employment actions" and stated that it was "clear that there was a cause and effect relationship between the complaint ... and the retaliation inflicted by her co-workers." *Id.* The court reasoned that there is "nothing in the law of retaliation that restricts the type of retaliatory act that might be visited upon an employee who seeks to invoke her rights by filing a complaint." *Id.* at 1334.

This court is not persuaded by the *Knox* decision, however, that mere harassment is an adverse employment decision. The *Knox* court did not discuss any term or condition of employment that was affected by the harassing conduct and, especially given the Eleventh Circuit's opinion in *Jordan*, this court finds that it is not sufficient, for a finding of an adverse employment decision, merely to find that harassing remarks were made, but rather, there must also be a finding that those remarks altered a term or condition of employment by either affecting work performance or by creating a hostile environment.

■ To the extent, therefore, that harassment may be recognized as an adverse employment action, this court finds that Perryman has failed to establish that the actions of her employer were harassment that would qualify as an adverse employment action. The alleged harassment in this case is an investigation of possible forgery, which consisted of questioning and handwriting samples. The investigation was instigated when a Department official could not remember signing a document upon which his purported signature appeared. Perryman has not been prosecuted or disciplined in any manner in connection with this incident. Therefore, Perryman has not shown that her future employment has been affected or that her ability to do her job has been impaired.

■ To establish that the investigation affected a term or condition of her employment by creating a hostile environment, Perryman must show that the hostility was sufficiently pervasive to alter the conditions of employment and create an abusive working environment. *Edwards v. Wallace Com-*

*mun. College,* 49 F.3d 1517 (11th Cir.1995). In determining whether the requisite degree of pervasiveness is present, several factors are applied including 1) the frequency of the discriminatory conduct; 2) the severity of the discriminatory conduct; 3) whether the conduct is threatening or humiliating; 4) whether the conduct unreasonably interferes with the plaintiff's employment at work. *Edwards,* 49 F.3d 1517, 1521–22 (11th Cir. 1995). This court finds that Perryman's allegations of harassment in connection with an investigation that consisted of questioning, where there was no discipline, do not establish that there was a hostile environment.

■ Even if the alleged harassment of Perryman can constitute an adverse employment action, Perryman must still establish a connection between protected activity and the adverse employment action in order to establish a prima facie case of retaliation. The standard for fulfillment of the causal connection requirement of a prima face case of retaliation is interpreted broadly so that the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Meeks,* 15 F.3d at 1021. Even though this standard is slight, in the instant case, there is no evidence that the EEO activity and subsequent investigation were at all related. Perryman had settled her EEO claims with her employer. It was not until after she returned to work after taking medical leave that the investigation of her worker's compensation form occurred. There is no evidence, other than the order of occurrence, which links these two events.

■ Even assuming that Perryman established a prima facie case of retaliation, however, West has articulated a legitimate, nondiscriminatory reason for the employer's actions. West states that the supervisory official who purportedly signed Perryman's worker's compensation form could not recall signing the form, justifying an investigation into the matter.

■ In response to West's articulated reason, Perryman states that during the investi-

gation of the signing of her worker's compensation claim, the signing official, Mr. Garcia, said that he remembered Perryman coming to his office, but he forgot what he signed for her. Perryman's Deposition, page 141. However, Perryman has not made any allegation nor offered any evidence that Garcia had a discriminatory motive or that the Department had a discriminatory motive in acting on the information given to it by Garcia. Perryman simply alleges that the investigation was in retaliation of her prior complaints. However, a "plaintiff's allegations, opinions, and conclusory statements are insufficient to create an issue of fact as to show intent to discriminate." *Blount v. Alabama Cooperative Extension Service*, 869 F.Supp. 1543, 1553 (M.D.Ala.1994). Because Perryman has failed to sustain her burden of proof as to showing that the employer's articulated reason was pretextual, she has failed to establish both retaliation and reprisal. Therefore, summary judgment is appropriate as to the retaliation and breach of contract claims.[2]

### B. Hostile Environment Claim

It appears from the arguments of the parties that there is at least some confusion as to what Perryman's claims in this case are. In her response to West's Motion for Summary Judgment, Perryman outlines her claims as being for hostile environment harassment,[3] retaliation, and breach of a settlement agreement. West's Motion, however, does not discuss hostile environment harassment, but instead attacks the sufficiency of Perryman's claim for discrimination as if it were a disparate treatment claim. The significance of this difference is that underlying West's characterization is the implicit argument that Perryman cannot bring a claim for hostile environment harassment based on conduct which was the subject of the EEO complaints that she settled. Therefore, before the court can determine the sufficiency of Perryman's hostile environment claim, it must first address the evidence that Perryman is allowed to present to support such a claim, given that she entered into the Settlement Agreement.

Perryman argues that her hostile environment claim is a continuing violation and therefore, the events alleged in her earlier complaints are relevant to a present determination of whether or not there was a hostile environment. The court finds, however, that Perryman's continuing violation argument is unavailing for two reasons. First, the doctrine of continuing violation was established to allow plaintiffs to file discrimination claims after the statutory period for filing a charge of discrimination had expired, if there was a continuing pattern of discrimination. *See Slusser v. Orange County Public Schools*, 936 F.Supp. 895, 899 (M.D.Fla. 1996). There is no issue of timeliness alleged with respect to the Motion for Summary Judgment. Furthermore, there is no evidence that the existence of a purportedly hostile environment was only revealed to Perryman once she was investigated for alleged forgery.

The second reason that the continuing violation theory is unavailing in this case is that, even if a continuing violation theory were appropriate, for instance, if there were a question of timeliness, this court is persuaded by a decision in another district court that a settled claim cannot be revived. *See Martin v. Frank*, 788 F.Supp. 821 (D.Del.1992).

---

**2.** Perryman also apparently asserts a retaliation claim separate from the alleged retaliation arising out of the investigation of her worker's compensation claim form. Perryman argues in her brief that she suffered oppressive supervision, constant surveillance, the institution of special conditions of employment, and a transfer which all can suffice as adverse employment actions on the part of her employer. The court finds that Perryman's allegations are insufficient to state a prima facie case of retaliation for two reasons. First, the events to which she refers are apparently those alleged in the EEO complaints, including complaints for reprisal, which Perryman settled with her employer. Second, Perryman fails to establish a causal connection because she does not argue nor offer any evidence that any of these alleged adverse employment activities were in any way connected to protected expression.

**3.** Perryman states that a hostile environment existed based on race, color, sex, and retaliation. However, the evidence and arguments presented refer to the allegation in her brief that, "There is no doubt that black individuals were subjected to different treatment." Therefore, the court addresses the hostile environment claim as a racially hostile environment claim.

822

In *Martin*, the court held that "where plaintiffs timely filed complaints with an EEO counselor and eventually settled those claims ... the continuing violation theory does not apply to resurrect those claims." *Martin*, 788 F.Supp. at 825. Consequently, Perryman's continuing violation theory does not establish that the events underlying her settled EEO complaints can be used to establish a prima facie case of hostile environment harassment.

 Not only does this court find that Perryman's continuing violation argument is not a viable theory for using her settled EEO complaints to determine whether or not there was a hostile environment, but this court also finds that the use of the facts from the settled complaints is precluded under Eleventh Circuit precedent. In the Eleventh Circuit, "one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle." *Kirby v. Dole*, 736 F.2d 661 (11th Cir.1984). In *Kirby*, an employee settled an ADEA claim and the employer agreed that if it breached the settlement agreement, the employee would be allowed to reinstate his claim for further processing. *Kirby*, 736 F.2d at 662. Therefore, when the agreement was breached, the court held that the employee, by choosing to reinstate his claim, was bound by the settlement agreement not to bring suit on his claim. *Id.* at 663.

Similarly, Perryman was given a different job and her personnel record was expunged in exchange for her agreement not to pursue her EEO claims. To allow Perryman to use the information underlying those claims would allow her to make use of the benefit of the settlement while still pursuing her claims. Any claims which Perryman may have asserted on the discrimination she alleged in her EEO complaints were disposed of when she settled those complaints.

Even if Perryman were allowed to use the facts of the complaints which she settled to establish her hostile environment claim, however, West would still be entitled to summary judgment on the hostile environment claim.

To establish a claim for a racially hostile environment a plaintiff must show that she 1)

belongs to a protected class; 2) was subjected to unwelcome harassment; 3) the harassment was based on race; 4) the harassment effected a term, condition, or privilege of employment; and 5) respondeat superior. *See Bivins v. Jeffers Vet Supply*, 873 F.Supp. 1500, 1507 (M.D.Ala.1994), *aff'd*, 58 F.3d 640 (11th Cir.1995). When examining whether alleged conduct created a hostile environment, the court must look to the totality of the circumstances. *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982).

Perryman admits that no racial epithets or slurs were ever used by the people whom she claims discriminated against her. Perryman's Deposition, page 146. Therefore, to establish a prima facie case of hostile environment harassment, Perryman will have to rely on evidence that preferential treatment of white employees created a hostile or abusive work environment. *See Dudley v. Wal-Mart Stores*, 931 F.Supp. 773, 807 (M.D.Ala. 1996) ("a plaintiff also may establish a hostile work environment claim by showing that white employees receive more favorable treatment than their black counterparts").

 The subjects of Perryman's many EEO complaints range from allegations that she was denied benefits that white workers were given to allegations that her actions and phone calls were monitored by her supervisor. In most of her allegations, however, Perryman fails to establish that white employees, similarly situated, was treated differently from African American employees. For instance, Perryman asserts that she was harassed because she had to report to work before she was able to go to a class, while two other women were allowed to report straight from home to a class. Perryman's Deposition, page 115. However, one of these two women was an African American. *Id.* Perryman also alleges that she was singled out because if she arrived at work one minute late, she was docked for an entire hour. *Id.* at 46. However, Perryman admits that her employer sent a memo to all employees stating that if they were late, they would be charged with one hour leave, although Perryman contends that the memo was specifically directed to her. *Id.* at 109. Perryman alleg-

es that her supervisor denied her advance sick leave, but admits that a white woman was also having problems with the supervisor with regard to sick leave. *Id.* at 87.

Perryman does make an allegation specifically about two white employees. Perryman refers to a particular instance when she states that a white employee complained about Perryman's squeaky chair and Perryman was "called on the carpet," whereas when Perryman had complained about the same white employee, no action was taken. *Id.* 73. Perryman also refers to a white male who made her work assignments. *Id.* at 53. She does not allege, however, that this white male was more favorably treated and admits that he was in a higher job classification. *Id.* Perryman further admits that people in her job classification were consistently treated badly, both white and black. *Id.* at 113. In addition, Perryman asserts that she was singled out from everyone else, white or black. *Id.* at 124.

The evidence which Perryman has presented does not establish that whites were treated more favorably than blacks to the point that such disparate treatment created a hostile and abusive environment. Consequently, West's motion for Summary Judgment is due to be granted as to the hostile environment claim.

## V. *CONCLUSION*

For the reasons discussed above, Perryman has failed to sustain her burdens of proof with regard to her Title VII and breach of contract claims. Therefore, West's Motion for Summary Judgment is GRANTED. A separate order will be entered in accordance with this memorandum opinion.