**Robert F. McCOY, Jr., Plaintiff,**

v.

**MACON WATER AUTHORITY, H.E. Holcomb, and Charles Birkencamper, Defendants.**

**No. 5:94–cv–480–4 (HL).**

United States District Court, M.D. Georgia, Macon Division.

Feb. 5, 1997.

Order Denying Reconsideration June 16, 1997.

---

M. Linda Mabry, Macon, GA, for plaintiff.

Wallace Warren Plowden, Jr., Charles Ashley Royal, Macon, GA, for defendants.

## ORDER

LAWSON, District Judge.

Plaintiff Robert F. McCoy, Jr., filed this lawsuit on November 18, 1994, alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, civil rights violations under 42 U.S.C. § 1983, retaliation, constructive discharge, and First Amendment violations. Before the Court is Defendants' Motion for Summary Judgment. Because there are genuine issues of material fact which remain to be resolved, the motion is DENIED as to the hostile work environment sexual harassment claim. However, the Court finds that Defendants are entitled to judgment as a matter of law on all other claims. Accordingly, the motion is **GRANTED** as to Plaintiff's claims for retaliation, constructive discharge, violation of Section 1983, and interference with First Amendment rights.

### I. *Summary Judgment.*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in a favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is [1] no genuine issue as to any material fact and that [2] the moving party is entitled to judgment as a matter of law." Because at summary judgment "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), the Court must believe the evidence of the nonmoving party and draw all justifiable inferences in its favor. *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510. Summary judgment is not an appropriate occasion to weigh the credibility of evidence.

Although the Court is not to make credibility determinations concerning the parties' evidence, the party opposing summary judgment must be able to demonstrate that there is a genuine issue of material fact as to each essential element of its claim. Otherwise the movant will be entitled to judgment as a matter of law, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As explained above, the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion; nevertheless, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact. The non-moving party must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc. v. U.S. Industries, Inc.,* 736 F.2d 656, 658 (11th Cir.1984).

As to materiality, "the substantive law will identify which facts are material. Only disputes that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. For a question of fact to be "genuine," there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.,* 477 U.S. at 249–250, 106 S.Ct. at 2511. (Cites omitted). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986)). Only those doubts about facts that are reasonable must be resolved in favor of the nonmovant. *Irby,* 44 F.3d at 953.

## II. Facts as Construed in Plaintiff's Favor.

Plaintiff Robert McCoy (McCoy) began employment with the Macon Water Authority in August, 1985, immediately after being graduated from high school. Within two years, he received a Class II Wastewater Certification and became a supervisor at the Rocky Creek Pollution Control Plant. Some time later, he transferred to the Wilson Plant, where he served as supervisor for approximately five years. At the time he left the Water Authority in August, 1994, McCoy was acting as the supervisor of the Wilson Plant and the Land Spray Application Plant. As the supervisor and only employee at both plants, McCoy was responsible for the regular maintenance and operation of the plants, and was required to collect wastewater samples from industrial plants for testing and monitoring. His work was supervised by Charles Birkencamper, the manager of the Rocky Creek Plant.

McCoy alleges that during the course of his employment with the Water Authority, Birkencamper made various sexual comments and expressed· a sexual interest in him. McCoy has testified that Birkencamper repeatedly and directly asked him about the size of his penis; indirectly inquired about the size of his penis by asking the size of his girlfriend's vagina; commented on his body; suggested that he take up bodybuilding or become a wrestler; speculated about his sexual performance; invited him to go to car shows out of town and share a hotel room; and discussed intimate relations with a male friend. A female employee has testified that Birkencamper frequently spoke to her about his male friend and his friend's body. On one occasion, Birkencamper refused to allow McCoy to attend a wastewater seminar in Augusta so that McCoy could go to a seminar with Birkencamper at Jekyll Island in the summer and so that Birkencamper might see him in a bikini bathing suit. According to

McCoy, Birkencamper showed no sexual interest in women.

In February or March of 1994, McCoy complained to Don Thompson, Director of Plant Operations for the Macon Water Authority, about Birkencamper's behavior. McCoy alleges that Thompson did not investigate his complaint and took no formal action in response to his concerns, but only told him to avoid Charles Birkencamper as much as possible. Thompson held a staff meeting on March 17, 1994, at which he discussed sexual harassment and warned the staff, including Birkencamper, who was present at the meeting, to avoid openly discussing "things of a personal nature." (Plaintiff's Exhibit 10). McCoy has admitted that Birkencamper did not make any more comments of a sexual or offensive nature after his complaint to Thompson. After receiving an inquiry from a television station, H.E. Holcomb, Executive Director of the Macon Water Authority, interviewed McCoy and then questioned Birkencamper's secretary and the assistant manager of the Rocky Creek Plant, Joe Bledsoe. Although Holcomb did not conduct a formal investigation beyond questioning McCoy and the two Rocky Creek employees, he wrote McCoy on March 22, 1994, concluding that no justification existed for a charge of sexual harassment.

On the same day that he received the letter from Holcomb, McCoy received a new work schedule from Birkencamper and Bledsoe, which he found to be excessively demanding. The next day, March 23, McCoy filed a charge of sexual harassment with the EEOC and complained to Don Thompson that the work schedule was in retaliation for his sexual harassment complaints. When Holcomb learned of McCoy's EEOC charge, he sent Thompson to "get" McCoy and bring him to the office. McCoy was carried to Holcomb's office for a meeting which McCoy characterizes as threatening and intimidating. In response to the meeting, McCoy filed another EEOC charge on April 20, 1994, alleging retaliation.

On May 31, 1994, McCoy was directed to report only to Joe Bledsoe, at 4:15 PM each day. His monitoring records were moved to

Bledsoe's office across the street, where McCoy was to record his daily readings at the end of each day. Bledsoe had a hostile attitude towards McCoy and required him to remain in the office from 4:15 until the end of the day. McCoy also alleges that Bledsoe searched his desk and that other employees were ordered to spy on him. Citing the treatment he was receiving at work, McCoy resigned from his position at the Water Authority on July 29, 1994.

*III. Title VII and Same–Sex Sexual Harassment.*

By arguing that summary judgment is appropriate because Title VII does not provide a cause of action for same-sex hostile environment sexual harassment, Defendants have cast this court into the center of an intense nationwide jurisprudential debate. Dozens of cases dealing with the issue have been decided in the past three years, but the issue remains unsettled. Although there appears to be an emerging majority which favors the extension of Title VII to include an action for same-sex harassment, neither the Eleventh Circuit nor the Supreme Court have ruled on the issue [1], and only three other circuit courts have directly addressed it. There are strong arguments on both sides of the debate which the Court must consider carefully.

The argument against allowing a cause of action for same-sex harassment is rooted in legislative intent and judicial restraint. Courts have noted that sexual harassment itself is a judicial extension of Title VII created as a means of preventing an indirect form of sexual discrimination. There is no mention of "sexual harassment" in the language of the statute, which states in relevant part that "it shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). The Supreme Court, in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), held that a plaintiff could establish a violation of Title VII by proving that discrimination based on sex resulted in the creation of a hostile work environment. In other words, sexual harassment is prohibited because it is a means of establishing or maintaining the inferiority of members of a certain sex in the workplace by exposing them to demeaning or abusive conditions. As one district court has noted, "There is no law specifically outlawing sexual harassment. Sexual harassment is illegal *because and only because* it is a form of gender discrimination." *Vandeventer v. Wabash National Corp.,* 887 F.Supp. 1178, 1180 (N.D.Ind.1995) (emphasis in original).

Most courts that have refused to recognize a cause of action for same-sex harassment, including the Fifth Circuit Court of Appeals in *Garcia v. Elf Atochem North America,* 28 F.3d 446 (5th Cir.1994), have followed the reading of Title VII adopted by the court in *Goluszek v. Smith,* 697 F.Supp. 1452 (N.D.Ill. 1988), concerning the purpose of the statute:

The goal of Title VII is equal employment opportunity. *Connecticut v. Teal,* 457 U.S. 440, 448, 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1984). That goal is accomplished in part by imposing an affirmative duty on employers to maintain a working environment free of discriminatory intimidation. *See* E.E.O.C. Dec. No. 74–05, 6 Fair Empl. Prac.Cas. (BNA) 834 (1973). The discrimination Congress was concerned about when it enacted Title VII is one stemming from an imbalance of power and an abuse of that imbalance by the powerful which results in discrimination against a discrete and vulnerable group. Note, *Sexual Harassment Claims of Abusive Work Environment Under Title VII,* 97 Harv. L.Rev. 1449, 1451–52 (1984). Title VII does not make all forms of harassment actionable, nor does it even make all forms of verbal harassment with sexual overtones

1. A District Court opinion finding that same sex harassment was actionable under Title VII in certain circumstances was affirmed without opinion by the Eleventh Circuit, but that case is distinguishable from the present case in that it concerned *quid pro quo* rather than hostile environment harassment. *Joyner v. AAA Cooper Transportation,* 597 F.Supp. 537 (M.D.Ala.1983), *aff'd without opinion,* 749 F.2d 732 (11th Cir. 1984). As noted in part III. of this opinion, Plaintiff has not stated a claim of *quid pro quo* harassment.

actionable. The 'sexual harassment' that is actionable under Title VII 'is the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person.' *Id.*, at 1451. Actionable sexual harassment fosters a sense of degradation in the victim by attacking [the victim's] sexuality. *In effect, the offender is saying by words or actions that the victim is inferior because of the victim's sex.*"

*Goluszek*, at 1456. (Emphasis added). Title VII was intended to end employment practices which limit the employment opportunities of persons because of their sex or relegate employees of a particular sex to an inferior status, not to eliminate offensive behavior in the workplace, however desirable that goal might be. While it has been interpreted to prevent harassment which enforces an inferior status for members of one sex, it has never been interpreted to forbid all offensive behavior. A supervisor could cruelly ridicule a subordinate because of the subordinate's diminutive stature, to the point of inflicting great psychological harm, without ever implicating Title VII. Title VII does not "create a tort of offense," nor does it "allow a cause of action for embarrassment." *Easton v. Crossland Mortgage Corp.*, 905 F.Supp. 1368, 1384 (C.D.Cal.1995). According to this line of argument, there are state law tort remedies for inappropriate workplace conduct, such as outrage, battery, and intentional infliction of emotional distress, which are better suited to address harassment that does not create an imbalance of power in favor of one sex over the other. *See Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138 (4th Cir.1996) (Murnaghan, C.J., dissenting).

█ Despite the existence of state tort remedies which might address the issue of unsuitable workplace behavior, the Court must accept the fact that the Supreme Court has interpreted Title VII to include a cause of action for hostile work environment harassment which is not limited to members of the female sex. As the Eleventh Circuit explained in the foundational case of hostile environment harassment, "the essence of a disparate treatment claim under Title VII is that an employee or applicant is intentionally singled out for adverse treatment on the basis of a prohibited criterion." *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir.1982). Therefore, an essential element of the prima facie case for hostile environment is that the harassment was based upon the employee's sex. A sexual harassment plaintiff need not show that every member of his or her sex was subject to the harassment, but only that "but for the fact of [his or] her sex, [he or] she would not have been the object of harassment." *Id.*, at 904.[2]

Thus rejecting the reasoning of *Goluszek* as inconsistent with the relationship of sexual harassment to disparate treatment, the courts that have decided to allow the cause of action for same-sex harassment, such as the Fourth Circuit in *Wrightson,* have focused on the "plain language" of the statute, particularly on the phrase "because of ... sex." The only relevant inquiry for Title VII purposes is whether the harassment was directed at the plaintiff as a result of the plaintiff's sex. Under this theory, the plaintiff still must show that members of one sex were exposed to adverse treatment as a consequence of their sex, while members of the other sex were not, although it is not necessary to provide evidence of an anti-male or anti-female environment. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372 (8th Cir.1996). Because Title VII protects both men and women, the sex of the harasser and the sex of the object of the harassment are not relevant. According to the EEOC, "[t]he victim does not have to be of the opposite sex from the harasser," but rather the "crucial inquiry is whether the harasser treats a member or members of one sex differently from members of another sex." EEOC Compliance Manual, § 615.2(b)(3). A Tennessee district court has summarized the argument:

In such cases, the sexual harassment would not be based upon sex because men and women are accorded like treatment." *Henson*, 682 F.2d at 904. *See, also, Baskerville v. Culligan Int'l Co.,* 50 F.3d 428 (7th Cir.1995).

---

**2.** In a curious *dictum*, the *Henson* decision notes that "there may be cases in which a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offensive to male and female employees. [Cits.]

"[T]he plain meaning of the phrase in Title VII prohibiting discrimination based on sex implies that it is unlawful to discriminate against women because they are women and against men because they are men. When a homosexual superior is making offensive sexual advances to a subordinate of the same sex, and not doing so to employees of the opposite sex, it absolutely is a situation where, but for the subordinate's sex, he would not be subjected to that treatment. Thus, . . . same-sex sexual harassment is actionable under Title VII."

*EEOC v. Walden Book Co., Inc.,* 885 F.Supp. 1100, 1103–04 (M.D.Tenn.1995). The *Walden* court and other courts which hold same-sex harassment to be actionable have adopted a "but for sex" test to determine whether harassment is a form of sexual discrimination prohibited by Title VII, or simply work-place harassment.

Courts using the "but for" approach face the difficult task of deciding whether the harassment was directed at the plaintiff because of his sex, which would be prohibited, or for some other reason, which would not be prohibited. Often this requires an inquiry into the "sexual preference" of the harasser.

"In a situation where a male sexually harasses a female, there is the presumption that he does so *because* she is a female and that he would not do the same to a male. The same is true when a homosexual or bisexual male harasses another male; there is the presumption that the harasser does so because he is sexually attracted to the male victim and would not treat a female in the same manner. The presumption arises from the sexually oriented harassing conduct and is predicated upon the perceived need for sexual gratification. Because of the demand by the harasser for sexual gratification, the victim is singled out because of his or her gender. Thus, there is discrimination based upon the victim's sex in violation of Title VII."

*Martin v. Norfolk Southern Ry. Co.,* 926 F.Supp. 1044, 1049 (N.D.Ala.1996) (emphasis in original). The court in *Martin* and other courts following the same logic (notably the Fourth Circuit in *Wrightson* and *Hopkins v.*

*Baltimore Gas and Electric Co.,* 77 F.3d 745 (4th Cir.1996)), have held that Title VII provides a cause of action for same-sex harassment if the harasser is homosexual, but not if the harasser is heterosexual. The plaintiff has the burden of presenting evidence that the harassment was directed at him because of his sex, usually by attempting to prove that the harasser acted out of sexual attraction. *Hopkins,* at 752 (4th Cir.1996).

This Court finds that the holdings of *Wrightson* and the numerous district courts around the country recognizing a cause of action for same-sex sexual harassment are more consistent with the language of Title VII and the judicially-created doctrine of sexual harassment. A plaintiff who can prove the elements of sexual harassment will be entitled to relief under Title VII regardless of the sex of the harasser and the sex of the plaintiff. Proving that the harassment was directed at the plaintiff because of sex, rather than for some other reason, may be an unpleasant and difficult affair, but it is the duty of courts, and especially of juries, to sort out such things.

## IV. Plaintiff's Sexual Harassment Claims.

Having decided that Title VII does recognize a cause of action for same-sex sexual harassment, the Court further finds that Plaintiff in the present case has come forward with sufficient evidence to show that there is a genuine issue of material fact as to each essential element of his claim. Accordingly, Defendants' motion for summary judgment is **DENIED,** as to the Title VII hostile work environment claim. To establish a claim of hostile environment harassment, a plaintiff must prove five elements:

(1) the employee belongs to a protected group;

(2) the employee was subject to unwelcome sexual harassment;

(3) the harassment complained of was based upon the employee's sex;

(4) the harassment complained of affected a "term, condition, or privilege of employment; and

(5) respondeat superior.

*Henson,* 682 F.2d at 901.

Plaintiff has met the first element simply by showing that he is a man. The second element of the case requires a plaintiff to show that he was subject to "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" (29 C.F.R. § 1604.11(a)) and that the conduct was "unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." *Henson,* 682 F.2d at 903. There is considerable testimony from Plaintiff which, if credible, could enable a reasonable jury to find that defendant Birkencamper did engage in such behavior and that Plaintiff did not solicit or incite it, but found it offensive.

To establish the critical third element of hostile environment harassment, Plaintiff has offered his own testimony and the testimony of a female employee that defendant Birkencamper was not interested in women, but only expressed interest in men. Based upon this testimony, a jury could find that Plaintiff was singled out for the harassment, if any, because he was a man, and that women in the office would not be liable to experience such treatment.

In order to prove that sexual harassment affects a "term, condition, or privilege" of employment, a plaintiff must show that the harassment was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. If a jury were to find Plaintiff's testimony credible as to all of the incidents which he describes, it would be justified in determining that the comments and actions of his supervisor were pervasive enough to make the workplace a very uncomfortable place to work. Plaintiff has alleged that he was repeatedly asked intimate anatomical questions, that he was made to sit in the supervisor's office and listen to discussions about men's bodies, and that he was frequently asked questions about his sex life and his sexual performance. Plaintiff has also presented evidence that he experienced mental and even physical symptoms as a result of the situation at work. This evidence is sufficient to create a genuine issue of material fact as to the fourth element of the hostile work environment case.

The final element is respondeat superior. In determining whether an employer will be held liable for the harassing acts of its employees, courts in the Eleventh Circuit have looked to agency principles for guidance. For example, an employer is strictly liable for *quid pro quo* harassment, since the offending supervisor in such cases "relies upon his actual or apparent authority to extort sexual consideration from an employee." *Henson,* at 910. The harasser is acting within the scope of his employment and thus is an agent of the employer. Strict liability is not appropriate in a pure hostile environment setting:

> "In a hostile environment case, no *quid pro quo* exists. The supervisor does not act as the company; the supervisor acts outside 'the scope of actual or apparent authority to hire, fire, discipline, or promote.' Corporate liability, therefore, exists only through *respondeat superior;* liability exists only where the corporate defendant knew or should have known of the harassment and failed to take prompt remedial action against the supervisor."

*Steele,* at 1316. In order to establish that the employer knew or should have known of the situation, a plaintiff must have evidence that she complained to higher management or that the harassment was pervasive enough to create an inference of constructive knowledge. *Henson,* at 905; *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988).

Plaintiff's claims of *quid pro quo* harassment lack merit. Plaintiff has testified that defendant Birkencamper denied him an opportunity to attend a training seminar in Augusta because Birkencamper wanted instead to have Plaintiff attend a seminar at Jekyll Island, so that Birkencamper could see Plaintiff in a bikini bathing suit. Even if this allegation is true, it does not state a claim of *quid pro quo* harassment. To establish a prima facie case for *quid pro quo* harassment, a plaintiff must show: (1) that he belonged to a protected group; (2) that he was subjected to unwelcome advances or

requests for sexual favors; (3) that the harassment was based on sex; and (4) that submission to the unwelcome advances was an express or implied condition for receiving a job benefit or avoiding a job detriment. *Henson,* 682 F.2d at 909. Plaintiff does not allege that his wearing a bikini or attending the Jekyll Island seminar was made a condition of his going to Augusta, or that he was not permitted to go to Augusta because he had refused to submit to sexual advances. Plaintiff does not allege that Birkencamper at any time asked for any sexual consideration; in other words, there is no allegation that Birkencamper offered any employment *quid* in exchange for a sexual *quo.* The Jekyll Island allegation is simply another aspect of Plaintiff's hostile environment claim. Accordingly, strict liability for the employer is inappropriate.

■ There is not sufficient evidence in the record to permit a reasonable jury to decide that the Macon Water Authority knew or had reason to know of the harassment and failed to take prompt remedial action. Plaintiff has testified that he first reported his concerns about Birkencamper's conduct to higher management in February of 1994, when he met with manager Don Thompson and explained that he was troubled by Birkencamper's comments. According to Plaintiff's testimony, Thompson told him to stay away from Birkencamper. There is evidence in the record to show that in a March 17, 1994, personnel meeting at which Birkencamper was present, Thompson discussed the Macon Water Authority policy on sexual harassment and reminded the supervisors that sexual harassment could include "making employees uncomfortable in the workplace." Plaintiff's Deposition Exhibit 10. Plaintiff in his deposition states that Authority director H.E. Holcomb met with him at the Riverside plant on March 14, 1994, to discuss his complaints about Birkencamper. At that meeting, Holcomb specifically asked Plaintiff if he wished to bring a sexual harassment complaint against Birkencamper. Plaintiff responded that he wished to speak to his attorney before bringing any complaint. Plaintiff's De-

position Exhibit 4, pp. 3, 10. There is no evidence that Plaintiff ever lodged a formal complaint with the Water Authority after speaking with his attorney, despite being on notice that such a procedure was available. Nevertheless, Holcomb conducted a brief inquiry, interviewing Birkencamper's secretary and Joe Bledsoe, and then issued a letter to Plaintiff dated March 22, 1994, stating that there was no justification for a charge of sexual harassment, but that "comments of this kind are not appropriate for the workplace and efforts will be made to modify behavior to eliminate such conduct." Plaintiff's Deposition Exhibit 5. Holcomb also encouraged Plaintiff in his letter to contact Don Thompson or Holcomb himself in case of any future problems, "even for minor violations." *Id..* Plaintiff has admitted that Birkencamper did not make any more comments of a sexually suggestive nature following the February complaint to Don Thompson, and that he had not complained of the situation to management before that time.

■ The Court finds that the evidence in the record, even when construed in the light most favorable to the Plaintiff, indicates that defendant Macon Water Authority did take prompt and effective remedial action as soon as it became aware of Plaintiff's complaint. It is not necessary for an employer to fire, suspend, or demote a supervisor whenever a complaint of sexual harassment is made. In some situations, particularly when there is some doubt as to the seriousness or the veracity of the charge or when the complainant is unwilling to state a formal charge, less drastic measures, such as warning the accused harasser, or reiterating the policy on harassment, will be more appropriate. Plaintiff can hardly criticize his employer for failing to conduct a formal investigation according to the procedures when he was himself unwilling to make a formal complaint, despite having notice of the procedures and the advice of an attorney[3]. However, it is significant that the informal steps taken by the Water Authority were effective. Once the complaint was made, the alleged harassment stopped.

---

**3.** This opinion should not be read to suggest that employers have no responsibility to address sexu-

al harassment complaints until the employee lodges a formal complaint.

██ Although there is no evidence that the Macon Water Authority failed to take prompt remedial action once it knew or should have known of the alleged harassment, there remains a genuine issue of material fact as to the Authority's respondeat superior liability, based upon the principles of agency law which the Eleventh Circuit has applied to hostile environment cases. Under an exception to the general agency principal that a master will not be liable for the torts of a servant committed outside the scope of the servant's employment, an employer may be liable for the employee's acts if the employee was aided in accomplishing the tort by the existence of the agency relationship. *See, Faragher v. City of Boca Raton,* 111 F.3d 1530, 1537 (11th Cir.1997) (en banc); Restatement (Second) of Agency § 219(2)(d). According to the note in *Faragher,* "the employer is liable only if the harassment is accomplished by an instrumentality of the agency or through conduct associated with the agency status." *Id..* There is evidence to support Plaintiff's contention that defendant Birkencamper used his authority as a supervisor to deny Plaintiff the opportunity to attend a seminar in order to "save" the Plaintiff for a later beach seminar, and that Birkencamper used his authority to require Plaintiff to come into his office and engage in lengthy conversations about sexual matters. Based upon this evidence, a reasonable jury could conclude that Birkencamper was aided in his harassing behavior by his status as an agent of the Macon Water Authority.

Because Title VII does recognize a cause of action for same-sex sexual harassment, and because there is sufficient evidence in the record to create a genuine issue of material fact as to each of the essential elements of hostile environment sexual harassment, Defendants' motion for summary judgment on Plaintiff's Title VII claims must be denied.

### V. Plaintiff's Retaliation Claims.

Plaintiff argues that "Defendants began a campaign of adverse and retaliatory actions against the Plaintiff" after Plaintiff filed his first charge with the EEOC on March 22, 1994. Plaintiff's Response Brief, p. 14. Because Plaintiff has failed to make out a prima facie case of retaliation, Defendants' motion for summary judgment is **GRANTED,** as to the retaliation claim. In order to make out a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) that his employer took adverse employment action against him; and (3) that there was a causal link between the protected activity and the adverse action. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993). Regardless of whether or not his claims had merit, Plaintiff was engaging in a statutorily protected activity when he filed his EEOC complaint. Defendants dispute, however, that the retaliatory actions alleged by Plaintiff constitute "adverse employment action" for purposes of Title VII. A recent district court decision from the Middle District of Alabama, *Perryman v. West,* 949 F.Supp. 815 (M.D.Ala. 1996), addresses the meaning of "adverse employment action" and notes that "[t]he Eleventh Circuit has not conclusively determined whether or not harassment can constitute an adverse employment action." *Id.,* at 819. The court in *Perryman* interprets the Eleventh Circuit's holding in *Jordan v. Wilson,* 851 F.2d 1290 (11th Cir.1988), to imply that the harassment must affect a term or condition of employment in order to constitute actionable retaliation. "In other words, an employment action must affect a term or condition of employment and is not adverse merely because the employee dislikes it or disagrees with it." *Id.,* at 819. The plaintiff in *Perryman* alleged that her employer investigated her for possible forgery of worker's compensation claims in retaliation for her EEOC complaints. The court held that the investigation was not an adverse employment action because the plaintiff did not show that her future employment had been affected or that her ability to do her job had been impaired. The Court finds the reasoning of *Perryman* persuasive and its holding reasonable, and agrees with its "term or condition" analysis.

██ In deciding whether harassment affected a term or condition of employment, the Alabama district court adopts the factors set forth in *Edwards v. Wallace Community College,* 49 F.3d 1517 (11th Cir.1995), for determining whether harassment is suffi-

ciently pervasive to alter the conditions of employment and create an abusive working environment. To measure pervasiveness, the court looks at the frequency and severity of the conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interfered with the plaintiff's work. *Id.*, at 1521–22; *Perryman*, at 820–21. Plaintiff in the case at hand alleges that he was harassed by being given an unreasonable work schedule, by attending a meeting which he perceived as "mean-spirited" and "condescending," by being made to cross the street and report to supervisor Joe Bledsoe each afternoon, by having his desk searched, and by being watched.

Plaintiff argues that the work schedule was impossible to meet and that he was never able to comply with it fully. However, there is no evidence that the schedule added any new duties or took away any privileges or responsibilities, nor is there any evidence that Plaintiff was ever reprimanded or disciplined for failing to follow the precise terms of the schedule. Plaintiff's subjective view that the schedule was unreasonable is not sufficient evidence that the schedule affected a term or condition of his employment. The April 6, 1994 meeting between Plaintiff and Holcomb also does not constitute an adverse employment action. The Court has reviewed the transcript and the tape of the meeting and finds that it is capable of differing interpretations. A reasonable jury could possibly find that Holcomb was hostile at the meeting, but it is at least as likely that a jury would find that Plaintiff was obstinate and insolent and that Holcomb was quite reasonable. Construing the evidence in the light most favorable to the Plaintiff and assuming that the meeting was hostile, the Court finds that the meeting did not affect a term or condition of employment. The meeting addressed legitimate employment concerns relating to Plaintiff's complaints, and did not result in any disciplinary action or detriment to the Plaintiff. Even with guidance from an expert, a reasonable jury could not conclude that the meeting was humiliating or demeaning. There are no allegations that Plaintiff was asked to attend any further "hostile" meetings.

Plaintiff's remaining retaliation allegations are without merit. Plaintiff claims that he was harassed when he was ordered to report to Joe Bledsoe in the afternoon rather than to Charles Birkencamper, whose office was across the street. The Court fails to understand how it could be harassment that Plaintiff was transferred away from the supervision of the man who, according to Plaintiff, had sexually harassed him. The transfer did not change Plaintiff's job duties and did not result in any inconvenience to Plaintiff. Plaintiff further complains that he was watched, that Bledsoe searched his desk, and that other employees treated him like he had a disease. It is not harassment for supervisors to monitor the performance of their employees, and Title VII does not require fellow employees to like each other. Plaintiff has presented no evidence that he had a privacy interest in the contents of his desk or that the "search" was in any way harmful to him. All of Plaintiff's retaliation complaints, taken together, do not add up to an adverse employment action which would affect his ability to do his work or hamper future employment opportunities.

## VI.  Plaintiff's Constructive Discharge Claim.

On July 29, 1994, Plaintiff resigned his employment with the Macon Water Authority. Plaintiff argues that his resignation was involuntary in light of the treatment he had received, and constituted a constructive discharge. To prove constructive discharge, a plaintiff must show that "working conditions were so intolerable that a reasonable person in [his] position would be compelled to resign." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989). As noted, the actions which Plaintiff contends were taken in retaliation against his sexual harassment complaints were not sufficient to affect a term or condition of Plaintiff's employment. For the same reason, even if all allegations are accepted as true, a reasonable jury could not find that the conditions were so intolerable as to require discharge. Plaintiff's dissatisfaction with the conditions at work is not sufficient to establish constructive discharge.

Therefore Defendants' motion for summary judgment is **GRANTED** with regard to the constructive discharge claim.

## VII. Plaintiff's Section 1983 Claims.

■ Defendant Birkencamper is entitled to summary judgment against Plaintiff's claims under 42 U.S.C. § 1983 on the basis of qualified immunity. State officials are immune from liability in their individual capacities under § 1983 unless their actions violate legal norms that are clearly established at the time of the challenged actions. *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 (11th Cir.1994). All of the § 1983 claims are related either to the sexual harassment charge against defendant Birkencamper or the retaliation charge. The retaliation charge, as noted above, is without merit. As for the harassment charge, it was not clearly established at the time of the events in question that same-sex sexual harassment is a violation of Title VII.

■ Plaintiff has also failed to create a genuine issue of material fact to support his Section 1983 claims against Defendant H.E. Holcomb and the Macon Water Authority. As the Supreme Court has explained,

a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Plaintiff has presented no evidence to refute Defendants' evidence that Holcomb did not have final policy-making authority with regard to personnel matters, nor is there evidence to show that the Macon Water Authority itself had a policy or custom encouraging or permitting supervisors to sexually harass employees. In order to establish liability against a municipal entity under Section 1983, a plaintiff must show at the very least that his injury was the result of a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law. *See, Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Plaintiff has not presented evidence to show that sexual harassment at the Macon Water Authority was widespread, permanent, or well settled. Accordingly, Defendants' motion for summary judgment is **GRANTED** as against Plaintiff's Section 1983 claims.

## VIII. Plaintiff's First Amendment Claims.

Plaintiff's First Amendment claim alleges that he suffered retaliation for making complaints about sexual harassment and for filing the EEOC complaint. Because the Court has found, in part V. of this opinion, that there is no evidence of a "campaign of retaliation" in response to Plaintiff's complaints, the First Amendment claim is without merit. Defendants' motion for summary judgment is **GRANTED** as to the claim.

### ORDER

■ On February 14, 1997, Defendants filed a motion asking the Court to reconsider the decision handed down in its order of February 7, 1997, granting in part and denying in part Defendants' motion for summary judgment. On March 21, 1997, along with his response to Defendants' motion for reconsideration, Plaintiff submitted his own motion for reconsideration. Defendants submitted an amended motion for reconsideration on June 12, 1997. Although the Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration, a district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment. *See*, Fed.R.Civ.Proc. 54(b); *Marconi Wireless Telephone Co. v. United States*, 320 U.S. 1, 47–48, 63 S.Ct. 1393, 1414–15, 87 L.Ed. 1731 (1943). The district court's discretion in deciding such motions should be guided by a desire to balance the need for finality and the duty to render just decisions. In order to accommodate these competing interests, this Court will grant a motion for reconsideration of an interlocutory order only if the movant demonstrates that there has been an intervening

change in the law, that new evidence has been discovered which was not previously available to the parties in the exercise of due diligence, or that the court made a clear error of law. In order to demonstrate clear error, the party moving for reconsideration must do more than simply restate his prior arguments, and any arguments which the party inadvertently failed to raise earlier are deemed waived. *Mateo v. M/S Kiso,* 805 F.Supp. 761, 787 (N.D.Cal.1991). The motion for reconsideration is not an opportunity for a party to improve upon his arguments or try out new arguments; nor is it properly a forum for a party to vent his dissatisfaction with the Court's reasoning. The Court assumes that in nearly every case at least one party will deem a decision to be based on flawed reasoning. However, for a court to reconsider a judgment "there must be a reason why the court should reconsider its prior decision, and [the moving party] must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Sussman v. Salem, Saxon & Nielsen, P.A.,* 153 F.R.D. 689, 694 (M.D.Fla. 1994).

Defendants argue in their motion that the Court erred in citing *Faragher v. City of Boca Raton,* 76 F.3d 1155 (11th Cir.1996), a decision which was withdrawn by the Eleventh Circuit pending rehearing *en banc.* Although reliance upon a withdrawn opinion may have been a clear mistake, the Eleventh Circuit's subsequent decision on rehearing does not substantively alter the analysis of *respondeat superior* liability, and the *en banc* opinion includes the precise language quoted in this Court's February 7 order. Nevertheless, the Court will amend its order by changing the citation of *Faragher* on page 15 to cite to the more recent decision. To the extent that Defendants argue that the Court improperly applied the principles of agency law outlined in *Faragher,* the motion is denied. The issues and arguments raised in Defendants' motion to reconsider and amended motion were contemplated by the Court on review of the motion for summary judgment, and will not be reconsidered now.

Plaintiff's motion for reconsideration argues four separate reasons for revising the order of February 7. Three of these reasons are merely refinements or restatements of arguments previously made, and do not merit reconsideration. However, Plaintiff correctly observes that the Court applied an incorrect legal standard in granting summary judgment in favor of the Macon Water Authority and H.E. Holcomb with regard to Plaintiff's claims under 42 U.S.C. § 1983. The defense of qualified immunity is available to individual defendants but not to local governments. Accordingly, section VII of the Court's order of February 7, 1997, beginning on page 19, will be amended to read as follows:

[Editor's Note: Amendments incorporated for publication purposes.]

The amendments to the Court's order of February 7, 1997, as described in this order, do not in any way alter the substantive outcome of the Court's decision. Except to the extent that they are addressed by these amendments, the motions for reconsideration of both the Plaintiff and the Defendants are DENIED.