# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | | |
|---|---|---|
| **DEMETRA LYREE PARKER,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | **Warren Chancery No. 5920** |
| | ) | |
| VS. | ) | **Appeal No. 01A01-9704-CH-00175** |
| | ) | |
| **WARREN COUNTY** | ) | |
| **UTILITY DISTRICT,** | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

**FILED**

**January 9, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF WARREN COUNTY
AT McMINNVILLE, TENNESSEE
THE HONORABLE JOHN W. ROLLINS, CHANCELLOR

**ROBERT S. PETERS**
**SWAFFORD PETERS & PRIEST**
Winchester, Tennessee
Attorney for Appellant

**DIANNA BAKER SHEW**
**STEPHEN H. PRICE**
**FARRIS, WARFIELD & KANADAY, PLC**
Nashville, Tennessee
Attorneys for Appellee

**REVERSED AND REMANDED**

ALAN E. HIGHERS, J.

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Plaintiff Demetra Lyree Parker appeals the trial court's order granting the motion for summary judgment filed by Defendant/Appellee Warren County Utility District. We reverse the trial court's judgment based on our conclusion that a genuine issue of material fact exists as to whether the Utility District responded promptly, adequately, and effectively to Parker's allegations of sexual harassment against the Utility District's general manager.

## I.  Factual and Procedural History

In October 1988, the Utility District's general manager, David Grissom, hired Parker to work at the Utility District.  Sometime in 1991 or 1992, Parker complained to her supervisor, Pam Link, that she was being sexually harassed by Grissom.   According to Parker, Grissom's actions included touching her breast, attempting to kiss her following a Utility District Christmas party, rubbing his body against hers, rubbing her legs and shoulders, commenting on the way her clothes fit her body, and whispering remarks of a sexual nature in her ear while she was working at the Utility District's drive-in window.  As Parker was leaving work one day, Grissom allegedly told her that "the solution to [Parker's] problem was [Grissom]" and that he "was a man" and "could take care of [her]."

Pam Link took Parker's allegations seriously because of her own experiences with Grissom.  Link testified that Grissom often would "undress" her with his eyes and that, on one occasion when Link and Grissom were in Pigeon Forge for a conference, Grissom entered Link's hotel room, pushed her onto the bed, and started "hunching" on her.  Link and another employee also heard Grissom tell Parker, upon learning that she had a date, to "keep [her] panties on" and to "keep her legs together."  In fact, Grissom's alleged sexual harassment of Parker was commonly discussed among the female employees in Link's office.

In response to Parker's allegations, Link asked Parker "what she wanted to do about" the harassment.  Parker told Link to do nothing because she feared that she would lose her job.  Believing that Parker's fear was justified, Link did not initiate any formal

2

complaint process or grievance procedure on Parker's behalf. Link instead advised Parker to try to avoid Grissom and "[n]ot to dress in a manner that might cause him to act the way he acted, that would give him ideas." After this discussion, Parker continued to complain to Link about incidents of harassment by Grissom which, Parker testified, occurred on almost a daily basis.

Although Link agreed not to pursue a formal complaint on Parker's behalf, Link did discuss Parker's allegations with one member of the Utility District's Board of Commissioners, Phillip Vinson. Like Link, Vinson asked what Parker wanted to do about the alleged harassment. Link informed Vinson that Parker did not "want anything done about it because she's afraid she'll lose her job." According to Link, Vinson agreed that Parker probably would lose her job if she pursued the allegations.

In addition to talking to Commissioner Vinson, Link spoke with Grissom, her boss, on an informal basis about his treatment of Parker. Grissom allegedly responded by saying that Parker had "done everything but lay [sic] down in the floor and take her clothes off in front of [him]." Based on this response, Link decided not to pursue the matter with Grissom because she concluded that any further conversation would not be productive.

Sometime in 1992 or 1993, Parker herself discussed the allegations of sexual harassment with Commissioner Vinson. In discussing the allegations, however, Parker specifically asked Vinson not "to go to the Board with it because she felt that she would [lose] her job." Vinson replied that he did not think Parker would lose her job, but that he had only one vote and did not know how the other four commissioners would vote. Vinson also advised Parker to sue the Utility District if she felt "like [she had] a harassment case." Throughout her discussions with Link and Vinson, Parker insisted that she did not "want to make an official complaint." Vinson did not report Parker's allegations to the rest of the Board of Commissioners, nor did he discuss the allegations with Grissom.

Grissom's alleged sexual harassment of Parker continued until April 1994, when Grissom voluntarily resigned from the Utility District. In the fall of 1994, however, the Board

of Commissioners considered rehiring Grissom as the Utility District's general manager. In an effort to prevent Grissom from returning to work at the Utility District, Parker brought her allegations of sexual harassment before the Board of Commissioners. Despite Parker's allegations, the Board voted to rehire Grissom, but the Board also hired outside counsel to conduct an independent investigation into Parker's allegations of sexual harassment. As a result of the investigation, the Board suspended Grissom without pay. Grissom did not sexually harass Parker after he was rehired.

In October 1994, Parker filed this action against Grissom, the Warren County Utility District, and two of its commissioners. In addition to asserting statutory claims under the Tennessee Human Rights Act,[1] Parker asserted common-law tort claims for negligent and intentional infliction of emotional distress. Parker subsequently filed a notice of voluntary dismissal without prejudice as to the two commissioners, Bobby Mayfield and Harrison Gant. The trial court later entered an agreed order dismissing with prejudice Parker's action against David Grissom.

The Utility District, the only remaining defendant, filed a motion for summary judgment contending, inter alia, that its "prompt, corrective action in response to [Parker's] allegations [was] a complete defense to any 'hostile environment' [sexual harassment] claim." The Utility District also moved for summary judgment as to Parker's common-law tort claims. The trial court granted the Utility District's motion, and this appeal followed. On appeal, Parker challenges only the trial court's dismissal of her sexual harassment claim against the Utility District.

## II. Legal Standard for Hostile Work Environment Claims
## Involving Supervisor Harassment

As a preliminary matter, we find it necessary to address the appropriate legal standard to be applied in this case. Under the Tennessee Human Rights Act, in order to prevail on a hostile environment claim based on sexual harassment by a co-worker, the

---

[1]See T.C.A. §§ 4-21-101 to 4-21-806 (1991).

4

employee first must establish the existence of a hostile work environment by proving the following elements:

> (1)    the employee is a member of a protected class;
>
> (2)    the employee was subjected to unwelcomed sexual harassment;
>
> (3)    the harassment occurred because of the employee's gender; [and]
>
> (4)    the harassment affected a "term, condition, or privilege" of employment; . . . .

Campbell v. Florida Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996) (citing Rabidue v. Osceola Ref. Co., 805 F.2d 611, 620 (6th Cir. 1986), cert. denied, 481 U.S. 1041 (1987)). Inasmuch as the Tennessee Human Rights Act does not impose strict liability for hostile environment claims, in order to recover against the employer, the employee additionally must prove that (5) "the employer either knew or should have known of the harassment, and failed to take prompt and appropriate remedial action." Campbell, 919 S.W.2d at 32 (emphasis in original). This final element is the focus of this appeal.

In the proceedings below, both the trial court and the parties relied on the foregoing "knew or should have known" standard when they addressed the issue of the Utility District's liability for Grissom's actions. In adjudicating analogous Title VII claims,[2] however, the federal courts have distinguished between the standards to be applied in co-worker harassment and supervisor harassment cases:

> Under the "hostile environment" theory, there are two types of cases, those where the harasser is a co-worker and those where the harasser is a supervisor. . . .
>
>     . . . .
>
>     . . . [U]se of the phrase "respondeat superior" is typically associated with the co-worker "knew or should have known" standard. A different but closely related standard of general agency applies in supervisor harassment cases.

---

[2]Inasmuch as the purpose and intent of the Tennessee Human Rights Act is to execute the policies embodied in the federal civil rights laws, our analysis of this issue is the same under both the Tennessee Act and Title VII of the federal act. Campbell, 919 S.W.2d at 31.

Kauffman v. Allied Signal, Inc., 970 F.2d 178, 182-84 (6th Cir.), cert. denied, 506 U.S. 1041 (1992).

In an earlier decision, the court outlined the agency elements to be applied in supervisor harassment cases:

> The essential question in applying agency principles is whether the act complained of took place in the scope of the agent's employment. This determination requires an examination of such factors as when the act took place, where it took place, and whether it was foreseeable. See generally Restatement (Second) of Agency §§ 217--232 (1958). The Restatement specifically provides that even though an act is forbidden it may still be within the scope of employment. Restatement (Second) of Agency § 230.

Yates v. Avco Corp., 819 F.2d 630, 636 (6th Cir. 1987) (emphasis in original). In holding the employer liable, the court conducted the following analysis of these agency factors:

> Here the harassment took place at the office, during working hours and was carried out by someone with the authority to hire, fire, promote and discipline the [employee]. There is no question that it was foreseeable. Had it not been, [the employer] would not have had a policy attempting to deal with it.

Yates, 819 F.2d at 636.

In the present case, it was undisputed that the alleged harasser was in a supervisory position over Parker at the Utility District. David Grissom was the Utility District's general manager, and Parker's supervisor, Pam Link, reported directly to Grissom who, in turn, reported to the Board of Commissioners. Accordingly, we conclude that the "scope of employment" standard for supervisors applies instead of the "knew or should have known" standard for co-worker harassment cases. Kauffman, 970 F.2d at 183.

We further conclude that the undisputed evidence with regard to the agency factors set forth in Yates supports the imposition of liability against the Utility District. The majority, if not all, of the alleged acts of sexual harassment took place on Utility District premises during working hours. Yates, 819 F.2d at 636. Moreover, the acts were carried out by someone in a supervisory position who exercised significant control over Parker's hiring, firing, or conditions of employment. Kauffman, 970 F.2d at 185. According to Parker's

supervisor, Pam Link, Grissom had the authority "to hire and fire as he saw fit." Grissom himself testified that he hired Parker and that only he had the authority to recommend raises for Parker and other employees. Although the Board of Commissioners had the ultimate authority to deny Grissom's raise requests, Grissom could not remember the Board ever doing so. Finally, in accordance with Yates, there is no question that the acts of sexual harassment were foreseeable.

### III. Utility District's Duty to Respond to Parker's Allegations and Parker's Failure to Invoke Formal Complaint Procedure

Although the "scope of employment" standard for supervisor harassment cases is different from the "knew or should have known" standard for co-worker harassment cases, the standards are similar in that an employer can avoid liability for supervisor harassment by showing that the employer responded promptly, adequately, and effectively to the problem once it had notice of the supervisor's alleged acts. Kauffman v. Allied Signal, Inc., 970 F.2d 178, 184 (6th Cir.), cert. denied, 506 U.S. 1041 (1992); cf. Campbell v. Florida Steel Corp., 919 S.W.2d 26, 32 (Tenn. 1996) (in order to prevail on co-worker harassment claim, plaintiff must show that employer knew or should have known of alleged harassment and failed to take "prompt and appropriate remedial action"). This defense requires that, once the employer has notice of allegations of sexual harassment, the employer must "act promptly and in a way which effectively eliminates the harassment." Graves v. Circuit City Stores, No. 03A01-9501-CH-00012, 1995 WL 371659, at *3 (Tenn. App. June 21, 1995); cf. Campbell, 919 S.W.2d at 33 (requirement of "prompt and appropriate remedial action" in co-worker harassment cases means that employer must take "steps 'reasonably calculated' to terminate the harassment").[3] In this case, the parties agree that the dispositive issue is whether the trial court erred in ruling, as a matter of law, that the Utility

---

[3]The only significant difference between the two standards may lie in the burden of proof. In a co-worker harassment case, as an element of her prima facie case, the plaintiff must prove that the employer knew or should have known of the alleged harassment and failed to take "prompt and appropriate remedial action." Campbell, 919 S.W.2d at 32. In contrast, in a supervisor harassment case, once the plaintiff has met her burden of establishing employer liability under agency principles, the employer can avoid liability by proving that it responded promptly and effectively to eliminate the alleged harassment. Kauffman, 970 F.2d at 184; Graves, 1995 WL 371659, at *3.

District promptly, adequately, and effectively responded to Parker's allegations of sexual harassment.

The Utility District contends, and apparently the trial court agreed, that no duty to take corrective action arose until Parker complained to the Board of Commissioners in October 1994 because, in making her earlier complaints to Supervisor Pam Link and Commissioner Vinson, Parker indicated that she did not want to make an "official" complaint and that she did not want any action taken on her complaint. We disagree.

In making this argument, the Utility District relies on Hollis v. Fleetguard, Inc., 668 F. Supp. 631 (M.D. Tenn. 1987), aff'd, 848 F.2d 191 (6th Cir. 1988). The facts of that case were similar in that, when the plaintiff complained to management, she urged them neither to confront the alleged harasser nor to investigate her allegations, and she insisted that "she could handle the problem." Hollis, 668 F. Supp. at 637. In the plaintiff's subsequent sexual harassment action, the court rejected the plaintiff's claim of liability against the employer:

> Once a member of management attempted to explore the plaintiff's claim . . . and was asked not to by the plaintiff, she will not be heard to say that her employer was thereafter responsible for the hostility of her work environment. On the whole, the court finds that the procedure followed, albeit meager, was "reasonably responsive to the employee's complaint," . . . .

Hollis, 668 F. Supp. at 637.

We conclude that the Hollis decision does not control the outcome of the case at bar for several reasons. First, Hollis was not decided on appeal from a summary judgment but, rather, was decided in a memorandum opinion issued by the trial court after a bench trial. Thus, unlike the present case, the trial court was in the position of weighing the evidence and deciding whether the employer's response to the plaintiff's allegations was reasonable. Moreover, in Hollis the court stressed that, even if the events described by the plaintiff were true, these events did not constitute sexual harassment. Hollis, 668 F. Supp. at 637 n.4. In contrast, for purposes of these summary judgment proceedings, the

8

evidence was undisputed that Parker made specific allegations against Grissom as early as 1991 or 1992, and that Parker's supervisor, Pam Link, considered the described behavior to constitute sexual harassment.  In this regard, the court in Hollis appears to have limited its ruling to the facts of that case.  The court ruled:

> Under this set of facts, the court does not find that [the employer's] management acted irresponsibly because they were not informed of any events constituting harassment. However, in most cases, a supervisor has a duty to investigate reported instances of sexual harassment, with or without an employee's consent.

Hollis, 668 F. Supp. at 637 n.4 (emphasis added).


The Hollis decision and other federal court decisions suggest that, while an employee's conscious decision to forego the employer's formal complaint process may weigh against the employee's claim of employer liability,[4] an employee's refusal or failure to lodge a formal complaint does not necessarily relieve the employer of liability for hostile environment sexual harassment.  Hollis, 668 F. Supp. at 637 n.14; accord Meritor Sav. Bank v. Vinson, 477 U.S. 57, 72 (1986) (rejecting employer's argument that it was insulated from liability by "the mere existence of a grievance procedure and a policy against discrimination, coupled with [the employee's] failure to invoke that procedure"); Varner v. National Super Mkts., 94 F.3d 1209, 1213 (8th Cir. 1996) (rejecting employer's argument that it was entitled to judgment as matter of law based on employee's failure to invoke reporting procedures of employer's sexual harassment policy), cert. denied, 117 S. Ct. 946 (1997).  As pointed out by the court in Hollis, an employer has some duty to investigate an employee's complaint, with or without the employee's consent.  Hollis, 668 F. Supp. at 637 n.4.  Other courts have recognized that employers have a responsibility to address allegations of sexual harassment even where the employee has declined to lodge a formal complaint.  McCoy v. Macon Water Auth., 966 F. Supp. 1209, 1219 n.3 (M.D. Ga. 1997).  The relevant question is whether the employer had notice of the alleged harassment and "failed to implement prompt and appropriate corrective action."  Varner, 94 F.3d at 1213.

---

[4]See, e.g., Hartleip v. McNeilab, Inc., 83 F.3d 767, 776 (6th Cir. 1996).

Rather than relieving the employer of liability, the employee's failure to invoke an existing grievance procedure is merely a factor to take into consideration when determining the reasonableness of the employer's response to allegations of sexual harassment. As explained by one court,

> In some situations, particularly when there is some doubt as to the seriousness or the veracity of the charge or when the complainant is unwilling to state a formal charge, less drastic measures, such as warning the accused harasser, or reiterating the policy on harassment, will be more appropriate.

McCoy, 966 F. Supp. at 1219 (ruling that informal steps taken by employer constituted sufficient response to sexual harassment allegations where plaintiff was unwilling to make formal complaint) (emphasis added).

We conclude that summary judgment was precluded in this case because a genuine issue of material fact exists as to whether the Utility District responded promptly, adequately, and effectively to Parker's informal complaints of sexual harassment. It is undisputed that Parker consistently maintained that she did not "want to make an official complaint" because she feared she would be fired. Nevertheless, Parker's refusal to pursue a formal complaint did not relieve the Utility District of its duty to respond to her allegations. For example, the Utility District could have informally counseled Grissom on the subject of sexual harassment, or it could have required him and other employees to attend seminars dealing with sexual harassment issues and, specifically, with the issue of hostile environment sexual harassment. McCoy, 966 F. Supp. at 1219.

In mentioning these possible responses, we do not mean to imply that the Utility District was required to pursue these specific avenues, nor do we mean to imply that these responses would have been sufficient to relieve the Utility District of liability for Grissom's actions. The reasonableness of an employer's response to allegations of sexual harassment will vary depending on the circumstances of each case and, thus, must be evaluated on a case-by-case basis. Rabidue v. Osceola Ref. Co., 805 F.2d 611, 621 (6th Cir. 1986), cert. denied, 481 U.S. 1041 (1987); Campbell, 919 S.W.2d at 33. We merely

hold that, at this stage in the proceedings, the evidence reveals a genuine issue of material fact as to the reasonableness of the Utility District's response to Parker's allegations.

In determining the effect of Parker's failure to invoke the Utility District's formal complaint procedure and, ultimately, the Utility District's liability for Grissom's actions, the trial court also should consider Parker's reasons for refusing to follow the procedure. In this regard, the key inquiry is "whether a complainant has deliberately bypassed a procedure that she would know was effective." Valerio v. Dahlberg, 716 F. Supp. 1031, 1039 (S.D. Ohio 1988) (citing Meritor Sav. Bank, 477 U.S. at 72, 78). Again, we conclude that a factual dispute exists as to this issue.

The deposition witnesses gave conflicting testimony as to the existence of an established grievance procedure at the Utility District. Pam Link testified that the Utility District did have a grievance procedure but that, to her knowledge, the procedure never was explained to any of the Utility District's employees, including herself. At one time, Link had a copy of the grievance procedure in her desk, but she was not familiar with its provisions. Parker corroborated Link's testimony, stating that she never was told about the procedure for making such a complaint. When Parker initially complained to Commissioner Vinson, rather than instructing Parker to follow an established grievance procedure, Vinson told Parker that she should sue the Utility District if she felt "like [she] had] a harassment case." Grissom, on the other hand, testified that the Utility District had no sexual harassment policy in place during the time period in which the alleged acts of harassment occurred. According to Grissom, the Utility District did not adopt such a policy until October 1994, after Parker formally complained about Grissom's actions to the Board.

Even if the Utility District had an established grievance procedure or policy on sexual harassment, we conclude that the evidence raises a question as to Parker's knowledge of the effectiveness of such procedure or policy. When told of Parker's fear that she would be fired if she pursued a formal complaint, Link and Vinson did nothing to reassure her. Instead, Vinson stated that he did not know whether Parker would lose her job, that he did

not "think so," but that he was "only one vote" and he did not know "what the other four [commissioners would] do." Like Parker, Link believed that Parker would lose her job if she lodged a formal complaint. In light of this evidence, we are unable to conclude as a matter of law that Parker's failure to pursue an official complaint precludes a finding of liability against the Utility District. See Valerio, 716 F. Supp. at 1039-40.

The trial court's judgment is hereby reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Utility District, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.